[Civ. No. 50083. Second Dist., Div. One. Apr. 15, 1977.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
DANIEL HERNANDEZ VASQUEZ, Real Party in Interest.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Michael Demby and G. Keith Wisot, Deputy Public Defenders, for Real Party in Interest.

**OPINION**

**HANSON, J.—**

INTRODUCTION

The People petition for a writ of mandate or certiorari to compel the trial court to vacate its order granting defendant Daniel Hernandez Vasquez' motion pursuant to Penal Code section 995[1] to set aside a "great bodily injury" allegation in count III of the information in which defendant was charged with robbery in violation of section 211. The People also seek to compel the trial court to annul its order granting defendant Vasquez' motion to set aside an allegation that the victim suffered bodily harm in count I of the information in which defendant was charged with kidnaping for the purpose of robbery in violation of section 209.

THE CASE

The reporter's transcript of the preliminary hearing reflects that Norma R. on June 14, 1976, between 1 and 2 a.m. in the morning was behind the driver's wheel of a two-door vehicle on Whittier Boulevard in East Los Angeles with Debra D. sitting next to her as a passenger; that they were stopped in the Jack-in-the-Box line when defendant Vasquez approached them and asked them to drive him to the Jack-in-the-Box to order some food; that she (Norma R.) kept saying "Well, we really have to be going on our way" but defendant insisted; that defendant entered the car through the passenger door and sat in the back seat; that after they drove through the food line at the Jack-in-the-Box and bought the food defendant ordered and which he paid for, she asked him where he wanted to be dropped off; that defendant stated he wanted to be dropped off at the Ashmun Hotel in Whittier about six blocks from the Jack-in-the-Box; that when they approached the hotel defendant instructed her to go into the alley in back of the hotel to let him off; that when they parked in the alley in the back of the hotel, she said: "Okay, you're here now"; that defendant then asked them if they wanted to go to a party with him and they responded in the negative; that she started driving along the alley to pull out onto the street and defendant told her to reverse her car, indicated that it was a stick-up, and reached down into his pants like he was about to pull out a gun; that she was scared and put

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

the car in reverse, and after it was started again defendant, who was still in the back, leaned over and put the lever of the automatic transmission which was on the steering wheel in "park" position and said: "Don't be so stupid," . . . "Do what I tell you"; that Norma R. exited the car, leaving her purse and shoes behind, and as she did so defendant ripped off half of her shirt; that she ran from the car, crossed Whittier Boulevard and knocked at the door of a house for help but no one answered and then a Jeep drove by and she yelled for help and the Jeep stopped.

Witness Debra D. testified that on June 14, 1976, she was sitting in the passenger seat of a car driven by Norma R. and that she was seven months pregnant with a pregnancy-type stomach. Debra D. testified substantially as did Norma R. up to the time Norma R. jumped out of the car and ran; that after Norma R. ran defendant first grabbed her (Debra D.) by the hair, told her to "Pull the seat up," then "threw" her out of the car and told her to "Run"; that she told him "I can't run" and he said: "Run or I'll kill you and your baby right now"; that she tried to run and defendant said: "Your friend went after help," . . . "I know this area" and "Come on"; that defendant had her by her hair and right arm and they went up some stairs and down some stairs into an alley where there was a white picket fence; that defendant told her to "Climb over it" and she told him "I can't" because it was too high; that the defendant picked her up and threw her over the fence and jumped over after her; that she tried to run but defendant grabbed her by the hair and threw her to the ground and said: "Don't be stupid"; that he then pulled her up, pulled her to another location, pulled some sheets off of a line, threw her on the ground, "jumped" on top of her, told her to take off her clothes and she said "No"; that defendant had a rock about four to five inches long that came to a point like a spear, had it pointed at her throat and kept shoving the rock deeper in her throat until she disrobed; that she took her clothes off because he said: "It's the same getting it from a dead person as it would be from a live person. It don't matter to me"; that defendant took off his shirt, sweater and Levis until he was completely nude, raped her and then tried to force her to commit oral copulation but she bit it and then was in the act of raping her again when the police helicopter flew over; that defendant pulled more sheets off the clothes line, covered them and told her to "Lie still" but she kept moving her legs so the officers in the helicopter would see them and the police came and arrested defendant at the scene; that when defendant left the car he took Norma R.'s purse with him and also took Debra D.'s rings from her fingers and necklace from her neck.

The information in respect to the passenger victim only (Debra D.) charged that the defendant had committed kidnaping for the purpose of robbery in violation of section 209 (count I), robbery in violation of section 211 (count III), rape in violation of section 261, subdivisions 2 and 3 (count V), oral copulation in violation of section 288a (count VI), and assault with means of force likely to produce great bodily injury and with a deadly weapon in violation of section 245, subdivision (a) (count VII). The kidnaping for the purpose of robbery count contained an allegation that the passenger, while being subjected to such kidnaping, suffered bodily harm. The robbery count contained an allegation that in the commission of the robbery defendant, with the intent to inflict such injury, inflicted great bodily injury on the passenger within the meaning of section 213.

The superior court granted defendant's motion pursuant to section 995, and set aside the great bodily injury allegation in the robbery count and the allegation that the victim suffered bodily harm in count I (kidnaping for the purpose of robbery).

The People thereafter petitioned this court for an extraordinary writ in which it seeks a review of the trial court's action in setting aside the two enhancement allegations described above. We issued an alternative writ of mandate. Defendant, in addition to answering the merits of the petition, has demurred upon the ground that the People have failed to show that the action of the trial court in setting aside penalty enhancing allegations is in excess of its jurisdiction under section 995.

DISCUSSION

I

■ We hold the People are entitled to review by extraordinary writ as to the portion of the trial court's order setting aside the great bodily injury allegation in the robbery count (*People* v. *Superior Court (Lozano)* (1977) *post,* p. 57 [137 Cal.Rptr. 767]; see also: *People* v. *Superior Court (Edmonds)* (1971) 4 Cal.3d 605 [94 Cal.Rptr. 250, 483 P.2d 1202]; *People* v. *Superior Court (Brodie)* (1975) 48 Cal.App.3d 195 [121 Cal.Rptr. 732]).

We further conclude there is no valid basis for distinguishing between the People's right to review by extraordinary writ an order which sets aside a great bodily injury allegation and the People's right to such

review of an order which sets aside an allegation that the victim suffered bodily harm. The bodily harm allegation is also a type of enhancement punishment. ■ The defendant cites no case which overrules the clear determination in *People* v. *Chessman* (1951) 38 Cal.2d 166, 185 [238 P.2d 1001], that forcible rape itself is bodily harm. *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], overruled only the portion of *Chessman* which held that kidnaping for the purpose of robbery is not committed if the victim's movements are only incidental to the commission of the underlying crime of robbery. *Daniels* did not otherwise alter the holdings of *Chessman.* Thus, the trial court was required to interpret section 209 in accordance with *Chessman* as to the meaning of bodily harm and its failure to do so was an act in excess of its jurisdiction.

Accordingly, we conclude that review by extraordinary writ at the request of the People is proper. (*People* v. *Superior Court (Edmonds), supra,* 4 Cal.3d 605.)

## II

Turning to the merits of the present matter, it is apparent defendant's contentions as to the correctness of the trial court's action in setting aside the "great bodily injury" allegation in the robbery count have been answered in the negative by our decision in *People* v. *Superior Court (Lozano), supra, post,* page 57, and by the earlier decision of *People* v. *Cardenas* (1975) 48 Cal.App.3d 203 [121 Cal.Rptr. 426]. ■ We, therefore, hold that forcible rape may constitute "great bodily injury" under the provisions of section 213 and that the trial court erred in setting aside the allegation of great bodily injury at this stage in the proceedings.

■ In view of our conclusion that forcible rape may constitute "great bodily injury," we conclude a fortiori that forcible rape also constitutes bodily harm. That conclusion is in accordance with *Chessman, supra,* and even with *In re Dennis* (1975) 46 Cal.App.3d 50 [120 Cal.Rptr. 267], upon which defendant relies. *Dennis* at page 60 states: "[R]apes and 'simple' kidnapings . . . call for lighter punishment than kidnaping for robbery when the victim is substantially harmed (such as by rape itself). . . ." (Fn. omitted.)

The other cases cited by defendant are either not in point or merely stand for the proposition that bodily harm does not mean unsubstantial harm or the kind of harm present in almost every forcible kidnaping.

*People* v. *Daniels, supra,* 71 Cal.2d 1119, merely acknowledges that the earlier decision of *People* v. *Jackson* (1955) 44 Cal.2d 511 [282 P.2d 898], had held that bodily harm must be force other than that needed to accomplish the ordinary kidnaping.[2] *In re Maston* (1973) 33 Cal.App.3d 559 [109 Cal.Rptr. 164], and *People* v. *Isitt* (1976) 55 Cal.App.3d 23 [127 Cal.Rptr. 279], note that trivial or insubstantial harm incidental to a forcible kidnaping is not bodily harm within the meaning of section 209. Neither *People* v. *Stephenson* (1974) 10 Cal.3d 652 [111 Cal.Rptr. 556, 517 P.2d 820], nor *People* v. *Camden* (1976) 16 Cal.3d 808 [129 Cal.Rptr. 438, 548 P.2d 1110], was reviewing a conviction in which it was found that the victim suffered bodily harm and hence had no need to consider if the facts there constituted bodily harm. We find no reason to question the rule in *Chessman, supra,* as to bodily harm. In no way could forcible rape be labeled as unsubstantial harm.

Defendant in urging this court to reconsider the rule in *Chessman* asks us to consider certain amendments to the Penal Code which are to be effective July 1, 1977.[3] The amendments referred to are not now effective. The increased punishment for "bodily harm" in section 209 is the present law.

---

[2]In speaking of the definition of "bodily harm" which it disapproved, the Supreme Court in *People* v. *Jackson, supra,* 44 Cal.2d 511, said at page 516: "[T]his definition was restated in subsequent opinions, but in both the Tanner case and those which followed it, the victim of the kidnaping suffered serious bodily harm. (*People* v. *Tanner, supra,* [victims bound with wire, tortured and nearly suffocated]; *People* v. *Britton,* 6 Cal.2d 1, 3 [56 P.2d 494] [victims bound with wire and one of them struck on the head]; *People* v. *Brown,* 29 Cal.2d 555, 559 [176 P.2d 929] [victim forcibly raped and struck by defendant]; *People* v. *Chessman,* 38 Cal.2d 166, 185 [238 P.2d 1001] [*forcible rape and a violation of section 288a of the Penal Code*].)" (Italics added.)

[3]Penal Code section 12022.7, operative July 1, 1977, provides:

"In any case, except a homicide offense, in which defendant is convicted of a felony in which the infliction of great bodily injury is not an element of the crime but in the course of the commission of said crime and with the intent to inflict such injury, the defendant inflicts such injury upon any person other than accomplices, such fact may be charged in the indictment or information and if found to be true by the jury upon a jury trial, or if found to be true by the court upon a court trial, or if admitted by the defendant, defendant shall be punished by imprisonment in the state prison for three years in addition and consecutive to the punishment prescribed for the felony of which he has been convicted. However, if the court determines that there are circumstances in mitigation of the punishment prescribed, the court may strike the additional punishment, provided that reasons therefor are stated on the record.

"As used in this section 'great bodily injury' means a serious impairment of physical condition, which includes any of the following:

"(a) Prolonged loss of consciousness.
"(b) Severe concussion.
"(c) Protracted loss of any bodily member or organ.
"(d) Protracted impairment of function of any bodily member or organ or bone.

DISPOSITION

Let a writ of peremptory mandate issue requiring the superior court to vacate its order of November 29, 1976, insofar as that order set aside the allegation that the victim, while being subjected to said kidnaping, suffered bodily harm in count I of the information and the allegation that the defendant, with the intent to inflict such injury, inflicted great bodily injury on the victim in count III of the information.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied May 5, 1977, and the petition of the real party in interest for a hearing by the Supreme Court was denied June 9, 1977.

"(e) A wound or wounds requiring extensive suturing.
"(f) Serious disfigurement.
"(g) Severe physical pain inflicted by torture."
Sections 213 and 461 will no longer contain separate enhancement provisions.
The enhancement provisions as to bodily harm are retained in subdivision (a) of section 209 (effective July 1, 1977) as to kidnaping for ransom but the new subdivision (b) of section 209 provides: "(b) Any person who kidnaps or carries away any individual to commit robbery shall be punished by imprisonment in the state prison for life with possibility of parole."