[Civ. No. 51473. First Dist., Div. Three. July 29, 1981.]

THE PEOPLE, Petitioner, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO
JUDICIAL DISTRICT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
YEE NOR KONG, Real Party in Interest.

**COUNSEL**

Arlo Smith, District Attorney, Don Jacobson, Chief Assistant District Attorney, George Butterworth and Peter Aviles, Assistant District Attorneys, for Petitioner.

No appearance for Respondent.

Joseph C. Morehead for Real Party in Interest.

OPINION

**FEINBERG, J.**—This petition by the People for a writ of prohibition and/or mandamus challenges a magistrate's determination, after a post-indictment preliminary hearing, that six crimes charged as felonies should be considered misdemeanors. (Pen. Code, § 17, subd. (b)(5).)[1]

On August 6, 1980, real party Yee Nor Kong, an operator of several garment shops, was indicted by the San Francisco Criminal Grand Jury on 6 felony and 21 misdemeanor charges. The felony charges involved failure to collect and to account truthfully for employee wage taxes (Rev. & Tax. Code, § 19408) (three counts) and falsification of corporate accounts (Corp. Code, § 2255, subd. (b)) (three counts). Violation of these two sections is punishable as either a felony or a misdemeanor.

At arraignment, real party requested a postindictment preliminary examination, which took place on October 8 and 9, 1980. Testimony was presented and the grand jury transcript, as well as exhibits from the grand jury proceeding, were received into evidence by stipulation. The parties stipulated that a factual basis for each felony charge had been presented.

Thereafter, real party moved the magistrate to reduce all six felony charges to misdemeanors under section 17, subdivision (b)(5).[2] Petitioner objected based upon the assertion that the magistrate lacked jurisdiction to act pursuant to that section when the preliminary examination follows an indictment rather than a complaint.

---

[1]Unless otherwise noted, all statutory citations are to the Penal Code.

[2]Section 17, subdivision (b)(5) provides in pertinent part: "(b) When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances:
" . . . . . . . . . . . . . .
"(5) When, at or before the preliminary examination or prior to filing an order pursuant to Section 872, the magistrate determines that the offense is a misdemeanor, in which event the case shall proceed as if the defendant had been arraigned on a misdemeanor complaint."

The People presented this petition for the writ to the superior court, seeking an order directing the magistrate to set aside his determination that the charged felonies[3] were misdemeanors. The petition was denied and thereupon the People brought this application to this court. We issued an alternative writ.

## The Facts[4]

Real party in interest, Mrs. Yee Nor Kong, is a Chinese-born woman who has been engaged in the operation of several small shops which produce finished clothing for various local garment dealers. Mrs. Kong was educated in Hong Kong and has only an elementary knowledge of the English language and no formal business education. She had never been arrested prior to this incident and had never been given any warnings or admonitions by the Department of Employment Development.

Evidence introduced at the preliminary examination established probable cause to believe that Mrs. Kong had conspired with as many as 105 employees to assist them in obtaining partial unemployment insurance compensation to which they were not entitled. To conceal such fraud, Mrs. Kong falsified the permanent corporate payroll records and engaged in an "under-the-table" payment plan. As a result of these falsifications, real party under-reported to the State of California earnings for her employees on at least three "D.E.3" quarterly reports, which understatement resulted in underpayment to the state of $25,000 for the last three quarters of employee personnel tax withholding, unemployment contributions, and disability contributions for one of the four worksites alone. Of the 26 employees whose records were presented in full for demonstrative purposes (105 had made claims), the loss to the state for partial unemployment insurance compensation with supporting documentation and/or surveillance is $42,461.

In addition, there is a possible loss to the state for fraudulent partial unemployment insurance compensation claims by real party's employees of $2,000 per month for the three remaining worksites. The total loss to

---

[3]Throughout this opinion, we use the words "felony" or "felonies" to mean *only* those offenses punishable either as felonies or misdemeanors, in the discretion of the court. In the jargon of the criminal law, these offenses are known as "wobblers."

[4]Petitioner has not presented a transcript of the grand jury proceeding or the postindictment preliminary examination for our review. Thus, we have gleaned the facts from the allegations made in the petition and the opposition thereto.

the state in this case due to fraud by real party and her employees for the years 1977-1979 is estimated to be in excess of $200,000. All of the employees charged with fraud in these cases have been charged with misdemeanors, even though many are alleged to have obtained wrongfully over $2,500 in unemployment insurance benefits.

Petitioner makes the following contentions:

1. Mandamus is available to the People to review the magistrate's determination under section 17, subdivision (b)(5), that the felony offenses charged were misdemeanors.

2. The magistrate had no jurisdiction to reduce the charged felonies to misdemeanors under section 17, subdivision (b)(5), because the section does not apply to a postindictment preliminary examination proceeding.

3. If the magistrate did have jurisdiction to reduce the charged felonies, he abused his discretion in so doing and his determination must be reversed.

We agree that mandate is available but the review afforded by mandate is not as expansive as petitioner suggests.

■ We hold that a magistrate, in the context of a postindictment preliminary examination, has jurisdiction under section 17, subdivision (b)(5) to determine a felony to be a misdemeanor.

■ We hold that mandate is not available to review a judicial abuse of discretion *in a criminal case.* Therefore, we shall not reach the question as to whether there was an abuse of discretion in the case at hand.

We explain:

I. *Is Mandate Available to the People in a Criminal Proceeding Where Concededly Appeal Will Not Lie?*

The seminal case is *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491 [72 Cal.Rptr. 330, 446 P.2d 138]. In *Howard*, the trial court, on its own motion pursuant to section 1385, dismissed an infor-

mation in furtherance of justice after a jury had found the defendant guilty. Such an order is not appealable.

The People petitioned for a writ of mandate to vacate the order dismissing the information. The court issued an alternative writ and then denied the peremptory writ, stating, "mandate is not available for this purpose." (*Id.*, at p. 493.) Again, the court, in forthright fashion, wrote, "Is mandate permissible to review the determination made under this section [§ 1385]? We think not." (*Id.*, at p. 497.)

The predicate upon which the *Howard* court came to its conclusion is that "[t]he restriction on the People's right to appeal is not merely a procedural limitation allocating appellate review between direct appeals and extraordinary writs but is a substantive limitation on review of trial court determinations *in criminal trials.*" (*Id.*, at p. 498, italics added.) Thus, "[t]o permit the People to resort to an extraordinary writ to review where there is no right to appeal would be to give the People the very appeal which the Legislature has denied to them." (*Id.*, at p. 499.)

Does this mean that mandate is *never* available to the People to review a nonappealable order? Not so. It is an appropriate vehicle for review where the trial court has acted in excess of its jurisdiction in the traditional sense *only*, that is to say, "where the trial court has acted without jurisdiction of the subject matter or of the person." (*Id.*, at p. 500.) It appears clear to us that the *Howard* court disapproved of a broader reading of the phrase "in excess of jurisdiction" as it might apply in the circumstance of a *civil* case. (*Id.*, at pp. 500-501.)

Unfortunately, the *Howard* court, having clearly illuminated the field of extraordinary writ review of nonappealable orders sought by the People in criminal cases, then proceeded to cast a shadow by way of dicta.

Said the court "[a]*ssuming* that in some cases the matter may be of such importance that mandate may be available to the People to review determinations where appeal does not lie, we are satisfied that the proper balancing of these considerations [preventing harassment of the accused as against correction of possible errors] prohibits review by mandate at the request of the People where ... there is a danger of further trial or retrial." (*Id.*, at p. 501, italics added.) The court concluded its opinion, "*Assuming* we may review the merits in the instant case, we are satisfied that the record does not show an abuse of discretion ...." (*Id.*, at p. 505, italics added.)

Thus, in a number of criminal cases, appellate courts have followed the expansive concept of "in excess of jurisdiction" derived from *civil* cases, combined it with the *Howard* balancing test of correcting judicial error as against harassment of the defendant, and finding no danger of further trial or retrial, have held that mandate will lie at the request of the People in the absence of a right to appeal even though the trial court had jurisdiction of the person and subject matter.[5]

Most reluctantly we disagree with these cases. We believe *Howard*, and the Supreme Court cases that have followed it, direct otherwise.

In *People* v. *Superior Court (Edmonds)* (1971) 4 Cal.3d 605 [94 Cal.Rptr. 250, 483 P.2d 1202], a motion to suppress evidence was made by defendant pursuant to section 1538.5 in superior court prior to trial. It was denied. The case went to court trial and the evidence came in. At the conclusion of the trial, defendant renewed his motion to suppress. It was granted. Before entry of judgment, the People sought mandate to compel the trial court to set aside its order granting the motion to suppress.

The court held that though no specific statutory authority existed for mandate to issue on behalf of the People to set aside a suppression order made *during* trial, nevertheless, under general principles of law, if the trial court had no *jurisdiction* to entertain the renewed suppression motion at trial, the People would be entitled to mandate. But what did the court mean by "no jurisdiction." Referring to *Howard*, the *Edmonds* court said, "[W]e determined [in *Howard*] that 'the extension of review beyond the limits which the Legislature has deemed appropriate is not warranted *where the trial court has not exceeded its jurisdiction.'* [Citation]; italics added.) We disapproved certain prior cases which had suggested that every judicial act in excess of power is also an excess of

---

[5]In several instances, for example, it has been held that a court acts in excess of jurisdiction when it misconstrues or misapplies a statute. (See, e.g., *People* v. *Superior Court (Brodie)* (1975) 48 Cal.App.3d 195, 200 [121 Cal.Rptr. 732]; *People* v. *Superior Court (Duran)* (1978) 84 Cal.App.3d 480, 485-486 [148 Cal.Rptr. 698]; *People* v. *Municipal Court (Bonner)* (1980) 104 Cal.App.3d 685, 694 [163 Cal.Rptr. 822].) Other decisions have held that a court exceeds its jurisdiction when it fails to apply applicable precedent. (*People* v. *Superior Court (Lozano)* (1977) 69 Cal.App.3d 57, 61 [137 Cal.Rptr. 767], overruled on other grounds in *People* v. *Caudillo* (1978) 21 Cal.3d 562, 587 [146 Cal.Rptr. 859, 580 P.2d 274]; *People* v. *Superior Court (Vasquez)* (1977) 69 Cal.App.3d 14, 19 [137 Cal.Rptr. 762], overruled on other grounds in *Caudillo, supra,* at p. 587; *In re Richard C.* (1979) 89 Cal.App.3d 477, 484 [152 Cal.Rptr. 787].)

jurisdiction, and which had thereby extended the term 'jurisdiction' beyond its traditional sense, 'i.e., where the trial court has acted without the jurisdiction of the subject matter or of the person.'" (*Id.*, at p. 608.) The court concluded that the trial court could not entertain a renewed motion to suppress made during trial. Therefore, the trial court had no jurisdiction of the subject matter, i.e., the renewed motion to suppress. But that in and of itself did not warrant the issuance of the peremptory writ. In addition, the court found that there would be no danger of further trial or retrial if the suppression order were set aside (the trial court would simply enter judgment). "Therefore, mandate would be appropriate under the principles set forth in [*Howard*] ...." (*Id.*, at p. 609.)

*Edmonds* has, as we see it, dispelled the shadow cast by the dicta quoted above from *Howard.* Two conditions must be met before mandate will issue to reverse or set aside at the request of the People, a nonappealable order.

1. The order complained of must have been made without jurisdiction of the person or of the subject matter, the traditional scope of mandamus, *and*

2. the reviewing court must balance the error complained of by the People against the risk of harassment to the defendant, i.e., the possibility that if the peremptory writ issues, the defendant will be subjected to further trial or retrial.

We believe that our analysis of *Howard* and *Edmonds* is supported in *People* v. *Krivda* (1971) 5 Cal.3d 357, 364, footnote 5 [96 Cal.Rptr. 62, 486 P.2d 1262] (partially disapproved on other grounds in *Madril* v. *Superior Court* (1975) 15 Cal.3d 73, 77 [123 Cal.Rptr. 465, 539 P.2d 33] and *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 10-11, footnote 6 [136 Cal.Rptr. 409, 559 P.2d 1028]); *People* v. *Superior Court* (*Levy*) (1976) 18 Cal.3d 248, 250-252 [133 Cal.Rptr. 624, 555 P.2d 633]; *People* v. *Drake* (1977) 19 Cal.3d 749, 758-759 [139 Cal.Rptr. 720, 566 P.2d 622] (dicta); *People* v. *Superior Court* (*Stanley*) (1979) 24 Cal.3d 622, 625 [156 Cal.Rptr. 626, 596 P.2d 691].[6]

---

[6]We must admit that there is one Supreme Court decision that appears to be contrary to our view. In *People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164], the People challenged by way of petition for a writ of mandate the propriety of the respondent court's ruling which ordered the recusal of a

## 2. Did the Magistrate Lack Jurisdiction of the Person or the Subject Matter When he Determined That the Charged Felonies Were Misdemeanors?

Concededly, the magistrate had jurisdiction of the person. But, petitioner argues, he did *not* have jurisdiction of the subject matter. Put another way, even if the magistrate could have reduced the charges pursuant to section 17, subdivision (b)(5), if the proceeding had been instituted by an *original* complaint filed in municipal court, petitioner asserts that the magistrate lacked that power in the instant proceeding because this was a *postindictment* proceeding.

In support of that proposition, petitioner has developed an ingenious interpretation of *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916]. We admire the ingenuity and disagree completely.

The essence of petitioner's argument is that *Hawkins* "recommended a procedure whereby a magistrate could take cognizance of the case, entertain the hearing, and then return the matter to Superior Court, *thus perfecting the indictment.*"

Petitioner tells us that in a postindictment proceeding before a magistrate, the magistrate acts like a master. He has the *sole* function of conducting a hearing to determine whether there is sufficient competent evidence to bind the defendant over for trial. The magistrate cannot set bail, cannot issue discovery orders, and, in short, does not have the power of a magistrate. Thus, *Hawkins*, not only explicitly developed a new procedure, the postindictment complaint, it implicitly created a new judicial officer, someone who is more than a master and less than a magistrate, neither fish nor fowl nor good red herring.

Petitioner has cited no authority for this astounding result. In fact, there is authority directly contrary to the proposition advanced by petitioner, overlooked, no doubt, through inadvertence, which authority we shall discuss below.

Briefly, we advance our own view as to what *Hawkins* means.

---

district attorney because of conflict of interest. The *Greer* court stated that the trial court was within its authority and had not abused its discretion without addressing the issue of the extent to which writ review was available to the People.

The right of those defendants charged by a grand jury indictment to a preliminary examination was established in *Hawkins* v. *Superior Court, supra*, 22 Cal.3d 584, in which the California Supreme Court concluded that "an accused is denied the equal protection of the laws guaranteed by article I, section 7, of the California Constitution when prosecution is by indictment and he is deprived of a preliminary hearing *and the concomitant rights which attach when prosecution is by information.*" (*Id.*, at pp. 586-587, italics added.)

Prior to *Hawkins*, only defendants who had been prosecuted by complaint had a right to a preliminary hearing. In holding that the denial of this right to a defendant charged by indictment amounts to a violation of equal protection guaranteed by the state Constitution, the *Hawkins* court noted the advantages which a defendant derives from such a hearing: cross-examination of prosecution witnesses to aid in their impeachment at trial, preservation of favorable testimony of witnesses who may not appear at trial, access to information about the case against him, and opportunity for counsel to argue before a judge on such matters as setting bail or psychiatric examination (*id.*, at p. 588), as well as the most obvious advantage of having a "far more meaningful probable cause determination" (*id.*, at p. 592). In contrast to these protections afforded a defendant prosecuted by complaint is the grand jury procedure in which the prosecutor "decides what evidence will be heard, how it is to be presented, and then advises the grand jury on its admissibility and legal significance." (*Ibid.*)

It is therefore apparent from the foregoing discussion that the *Hawkins* court meant to grant those indicted equal rights with those whom the People chose to begin prosecution by way of complaint, by granting indicted defendants the right to require the prosecution to file a complaint and go to a preliminary examination. Although *Hawkins* does not specifically state that a magistrate has the authority to declare a felony to be a misdemeanor in a postindictment preliminary hearing, nothing in the opinion precludes assertion of that authority under section 17, subdivision (b)(5). Indeed, the equal protection analysis which forms the basis of the opinion strongly suggests that a postindictment preliminary hearing should provide *all* the protections afforded to a defendant prosecuted by information. It is only by granting indicted defendants a "preliminary hearing *and the concomitant rights which attach when prosecution is by information*" (*id.*, at p. 587, italics added) (including the right to a magistrate's ruling under section 17, subdivision (b)(5)), that the equal protection goals envisioned by *Hawkins* can be achieved.

As we have noted, petitioner has asserted that the only purpose of *Hawkins* was to give the indicted defendant an adversarial hearing as a result of which a judicial determination would be obtained as to whether probable cause existed. But the court pointed out in *Hawkins* that there are other benefits that flow from the complaint—preliminary examination. (*Hawkins* v. *Superior Court, supra,* 22 Cal.3d at p. 588.) To deny the indicted defendant these other benefits, including the benefit he could derive from section 17, subdivision (b)(5), would be to afford him less than equal protection.

Petitioner warns us of the horrendous procedural morass into which we would lead the criminal judicial system were we to hold contrary to the petitioner's position. For, says petitioner, there will be at one and the same time misdemeanor proceedings in municipal court and a valid, subsisting true bill lodged in superior court, both proceedings involving the same charges. We need not set forth the problems envisaged by petitioner in painful detail for petitioner's fears rest upon a false premise, namely that when a complaint is filed, postindictment, there remains a valid, subsisting true bill in superior court.

*Hawkins* tells us that "If the defendant makes a timely request for such a preliminary hearing, at the direction of the court *the prosecuting attorney shall refile the indictment as a complaint, thus activating the procedures set forth in the Penal Code* (see Pen. Code, § 859 et seq.)." (*Hawkins* v. *Superior Court, supra,* 22 Cal.3d at p. 594, italics added, fn. omitted.)[7] We do not see how the court could have made it more plain that the postindictment defendant who demands a preliminary examination stands in the same position as a nonindicted defendant charged in a complaint with a felony. Certainly, the Supreme Court knows the difference between filing a complaint and proceeding under section 859 et seq. and the bastard procedure argued for by the petitioner. If it had intended the latter, it would not have said the former.

Finally, with the simplicity with which Alexander solved the riddle of the Gordian knot, the court in *Martinez* v. *Superior Court* (1980) 106 Cal.App.3d 975 [165 Cal.Rptr. 267], solved the problems foreseen by

---

[7]Petitioner several times emphasizes that this procedure is only "recommended." This is erroneous. This procedure is *mandatory*, not exhortatory, under *Hawkins* "[u]ntil such time as the Legislature may prescribe other appropriate procedures." (*Id.,* at p. 593.)

petitioner. In *Martinez*, an indicted defendant moved to set aside the indictment pursuant to section 995 before entering a plea, and at the same time moved for a preliminary hearing ·pursuant to *Hawkins.* The court held that the defendant could do one or the other but not both, the reason being that once the defendant moves for a preliminary hearing, the indictment becomes *"functus officio,* and the prosecution thereafter proceeds by way of complaint, preliminary hearing and if the accused is held to answer, by information." (*Id.,* at p. 978.) "The indictment and the evidence presented to the grand jury would be completely supplanted by the new proceedings ...." (*Id.,* at p. 979.) The same court reiterated this holding in *Anthony* v. *Superior Court* (1980) 109 Cal.App.3d 346, 358 [167 Cal.Rptr. 246].

Thus, the indictment continues to exist in form only, having already served its purpose, and presents no obstacle to the exercise of authority under section 17, subdivision (b)(5).[8]

### Conclusion

We hold that the magistrate did not act in excess of jurisdiction because he did have jurisdiction of the person and the subject matter. Therefore, mandate will not lie.

It is not for us, the courts, to afford petitioner review when the Legislature has not granted it. If appellate review of an order determining a felony to be a misdemeanor is desired by the People, let petitioner go to the Legislature. The Legislature has the power. If in its wisdom it chooses to exercise it, so be it.

The peremptory writ is denied; the alternative writ is discharged.

White, P. J., concurred.

SCOTT, J.—I concur in the judgment. I agree that the magistrate, after a postindictment preliminary hearing, has the authority where an offense is punishable as a felony or as a misdemeanor to determine "that the offense is a misdemeanor" pursuant to the provisions of Penal Code section 17, subdivision (b)(2). The court in *Hawkins* v. *Superior*

---

[8]Like the Cheshire cat, the indictment has disappeared, leaving a grin behind.

*Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 582 P.2d 916] clearly intended that the magistrate serve the same function and with the same powers whether or not the preliminary examination has been preceded by an indictment. To hold otherwise would create chaos in the trial courts.

I also agree that the determination of the magistrate that the offense is a misdemeanor cannot be reviewed by extraordinary writ. In *People v. Drake* (1977) 19 Cal.3d 749 [139 Cal.Rptr. 720, 566 P.2d 622] the court held that the exercise of discretion by the trial court in reducing an offense to a lesser included offense after conviction pursuant to Penal Code section 1181, subdivision 6, was not only nonreviewable by appeal, it was nonreviewable by extraordinary writ. The court stated at pages 758-759: "Moreover, even if we believed the trial court's actions to be erroneous and were to consider the People's request for extraordinary relief, the request would have to be denied. The statutory restriction of the People's right to appeal in criminal cases 'is not merely a procedural limitation allocating appellate review between direct appeals and extraordinary writs but is a substantive limitation on review of trial court determinations in criminal trials.' (*People v. Superior Court* (*Howard*) (1968) *supra*, 69 Cal.2d 491, 498; see also *People v. Superior Court* (*Levy*) (1976) 18 Cal.3d 248, 251 [133 Cal.Rptr. 624, 555 P.2d 633].) This consideration carries particular force when the People seek review of an order which on its face is a timely exercise of a well-established statutory power of trial courts, but one from which no appeal is provided in section 1238. To allow the use of mandamus in this case would 'give the People the very appeal which the Legislature has denied them.' (*Howard, supra*, at p. 499; see also *People v. Valenti* (1957) *supra*, 49 Cal.2d 199, 205.)"

Here, too, the People concededly have no statutory right of appeal and to allow review by mandamus would in the words of the *Howard* court "'give the People the very appeal which the Legislature has to denied them.'" (*People v. Drake, supra*, at p. 759.)

I disagree, however, with that portion of the majority opinion that expresses a need to disagree with a number of Court of Appeal opinions approving review by writ of mandamus of various trial court orders. (See majority opn., p. 182, fn. 5.) By implication the majority also disapproves a number of uncited Court of Appeal opinions. (E.g., *People v. Municipal Court* (*Gelardi*) (1978) 84 Cal.App.3d 692 [149 Cal.Rptr.

30] and cases cited therein.) All of those cases are simply different from our own and their examination is not pertinent to our decision. Their disapproval by the majority interjects unnecessary uncertainty into the law.

A petition for a rehearing was denied August 28, 1981, and petitioner's application for a hearing by the Supreme Court was denied October 22, 1981.