[Civ. No. 44164. First Dist., Div. Two. Feb. 21, 1979.]

In re RICHARD C., a Minor.
THE PEOPLE, Plaintiff and Appellant, v.
RICHARD C., Defendant and Respondent.

[Civ. No. 44126. First Dist., Div. Two. Feb. 21, 1979.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
RICHARD C., a Minor, Real Party in Interest.

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg, Stan M. Helfman and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Appellant and Petitioner.

Benjamin Elliot Kaplan, under appointment by the Court of Appeal, and Nancy A. Aimola for Defendant and Respondent and Real Party in Interest.

No appearance for Respondent.

## OPINION

**KANE, J.**—This is an appeal and a petition for writ of mandate[1] filed by the People seeking appellate review of the juvenile court's judgment granting respondent minor's petition for rehearing and dismissing the charges against him.

On January 18, 1978, a petition was filed charging that Richard C. was a person described by section 602 of the Welfare and Institutions Code[2] in that he had violated three sections of the Penal Code, i.e., section 496, subdivision 1 (buying, concealing, receiving stolen property, a felony); section 12031, subdivision (a) (carrying a loaded firearm in a public place, a misdemeanor); and section 12025, subdivision (a) (carrying a concealable firearm without a license, a misdemeanor). The evidence giving rise to the petition and charges therein was produced at a suppression hearing initiated by the minor pursuant to section 1538.5 of the Penal Code, and may be summarized as follows:

---

[1] In order that the issues raised by the parties be adjudicated in a single proceeding, we have consolidated the petition for writ of mandate and the appeal on our own motion.

[2] Unless otherwise indicated, all references will be made to the Welfare and Institutions Code of California.

On Monday, January 16, 1978, at approximately 12:20 p.m., David Bozzi was in his garage when he heard voices coming from the area of his driveway. Mr. Bozzi peeked through the mail slot in the garage door and observed Richard C. and a female conversing no more than three feet from the garage door. Bozzi noted the minor's appearance and clothing, and saw a large bulge in the minor's rear pocket. Bozzi also saw that the minor was holding an automatic pistol[3] in his hand, and was attempting to load it. Upon seeing this, Bozzi went upstairs and reported to the police by telephone what he had observed. Bozzi then returned to the mail slot and continued to watch the minor and the female. When the female departed and the minor passed by the garage door on his way down the street, Bozzi opened the garage door. Momentarily, a police officer arrived. Bozzi provided a description of the pistol-toting youth, indicated the direction in which the minor was walking, got into the police car, and proceeded with the officer down the street, where he spotted Richard C. across the street, approximately one-half block from Bozzi's home. Bozzi pointed to him and announced, " 'That is the man.' " The officer observed that the minor fit the description previously provided by Bozzi. The officer then walked towards the minor on a diagonal and from behind. As he approached the minor, the officer ordered him to "halt," then asked Richard C. if he had a gun. At that point, the minor moved his right hand toward his waistband area. The officer knocked the minor's hand back, because "I wasn't about to allow him to get his hands around a gun." The officer then unzipped the minor's jacket and withdrew the loaded automatic pistol from the minor's waistband. The minor was thereupon handcuffed and placed under arrest for possession of a loaded and concealed weapon in a public place.

The procedural steps taken in the case may be described as follows:

On February 22, 1978, the matter came on before a juvenile court referee for hearing on Richard C.'s motion to suppress evidence and for a jurisdictional hearing.

On February 28, 1978, the referee issued findings and orders, in which (1) the motion to suppress was denied; (2) the allegations of the petition were found true beyond a reasonable doubt; (3) the matter was continued to March 2, 1978, for dispositional hearing.

---

[3] It was stipulated by the parties that the weapon at issue was a Mauser 7.65 millimeter automatic pistol.

On March 2, 1978, the minor petitioned the juvenile court for rehearing of the referee's ruling on the suppression motion and expressly waived rehearing of the jurisdictional finding.

On March 20, 1978, the matter came on for a dispositional hearing before the referee. After having read and considered the probation report, the referee issued a dispositional order which was filed on March 24, 1978, in which the minor was declared a ward of the court, was ordered placed in a study and evaluation program for a period not to exceed 90 days, and the matter was continued to June 23, 1978, for receipt of the evaluation report on the minor.

On April 18, 1978, the juvenile court granted the minor's *motion for rehearing of the suppression order,* which was submitted on the transcript of the suppression hearing, and ordered the petition dismissed.

While the main dispute between the parties revolves around the legality of the search and seizure, Richard C. also contends that appellate review is not available to the People. While we agree that the People do not have a right of direct appeal, we hold that—for reasons which follow—the ruling of the juvenile court is reviewable by a petition for an extraordinary writ.

■ Turning to the question whether appeal lies in the instant case, we invoke the well established principle reiterated in a series of cases that the right to appeal from an order or judgment in a criminal case is purely statutory. As a consequence, no appeal by the People is proper unless expressly permitted or authorized by statute (*People* v. *Valenti* (1957) 49 Cal.2d 199 [316 P.2d 633]; *People* v. *Thompson* (1970) 10 Cal.App.3d 129, 135 [88 Cal.Rptr. 753]; *People* v. *Hale* (1965) 232 Cal.App.2d 112, 125 [42 Cal.Rptr. 533]).

■ The pertinent statutory and regulatory provisions governing appeal in a juvenile case are section 800 and rule 1396 of the California Rules of Court. While section 800 provides that in a section 602 proceeding appeal lies only from a judgment or order of a juvenile court or *a final order of the referee declaring the minor a ward of the juvenile court,*[4] rule 1396 reaffirms that even if the conditions prescribed by

---

[4]Section 800 as amended in 1976 provides that "*A judgment or decree of a juvenile court or final order of a referee* which becomes effective without approval of a judge of the juvenile court assuming jurisdiction and *declaring any person to be a person described in Section 601 or 602,* or on denying a motion made pursuant to Section 567, *may be appealed* from in the same manner as any final judgment, and any subsequent order may

section 800 are satisfied, appeal may be taken *only* by the minor, his parent or guardian.[5]

In the case at bench we have neither a decree nor a judgment of the juvenile court declaring the minor a ward of the court under sections 601 or 602. Furthermore, it is clear that the order of the referee may not be considered final for two main reasons. ■ For one thing, the case law squarely holds that *where, as here, the order of the referee is adverse to the minor, it does not become final until the juvenile court has acted upon the minor's petition for rehearing (In re Edgar M. (1975) 14 Cal.3d 727* [122 Cal.Rptr. 574, 537 P.2d 406]; *In re Raymond P. (1978) 86 Cal.App.3d 797, 807* [150 Cal.Rptr. 537]). For another, section 249 itself clarifies that *"No order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court."* (Italics added. See also § 250.) The record here unambiguously indicates that while the March 24, 1978, order of the referee did remove the minor from the physical custody of his parents and placed him at the Hidden Valley Ranch School for study and evaluation purposes, the order was never expressly approved by a judge of the juvenile court.[6] The conclusion is thus inescapable that even if rule 1396 (which precludes an appeal by the People by implication) is disregarded, the appeal here taken must be held invalid and ineffective.

A much more sophisticated question is whether the judgment in dispute is reviewable by a prerogative writ.

In passing upon this issue, we are, of course, well aware of the general proposition that the restriction on the People's right to appeal is not only a procedural limitation allocating appellate review between direct appeals and extraordinary writs, but is a substantive limitation on review of the trial court's determinations in criminal trials and that to permit the People to resort to an extraordinary writ where there is no right to appeal

be appealed from as from an order after judgment; but no such order or judgment shall be stayed by such appeal, unless suitable provision is made for the maintenance, care, and custody of such person pending the appeal, and unless such provision is approved by an order of the juvenile court. Such appeal shall have precedence over all other cases in the court to which the appeal is taken. . . ." (Italics added.)

[5]Rule 1396 provides in relevant part that "(a) *In proceedings under section 601 or 602, the minor may appeal* from any judgment, order or decree specified in section 800. *The parent or guardian may appeal* from any judgment, order or decree specified in section 800 in which the minor is removed from the physical custody of the parent or guardian." (Italics added.)

[6]On the contrary, the effect of the judge's order granting the minor's motion to suppress is, of course, a *disapproval* of the referee's order.

would be to give the People the very appeal which the Legislature has denied them (*People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 498 [72 Cal.Rptr. 330, 446 P.2d 138]; *People* v. *Thompson, supra,* 10 Cal.App.3d 129, 136).

■ However, as the Supreme Court pointed out in *Howard,* the prohibition against proceeding by way of a writ when appeal is foreclosed is not absolute; rather, it requires a delicate balancing of the complicated considerations of preventing harassment of the accused as against correcting possible errors (*People* v. *Superior Court (Howard)* at p. 501). ■ In accordance with the balancing test spelled out in *Howard,* later cases acknowledge that review by a prerogative writ is possible if the trial court acts in excess of its jurisdiction, and if there is no danger of a further trial or retrial, which would be in contravention of the proscription against double jeopardy (*People* v. *Superior Court (Edmonds)* (1971) 4 Cal.3d 605 [94 Cal.Rptr. 250, 483 P.2d 1202]; *People* v. *Superior Court (Brodie)* (1975) 48 Cal.App.3d 195 [121 Cal.Rptr. 732]; see also *Jesse W.* v. *Superior Court* (1978) 20 Cal.3d 893 [145 Cal.Rptr. 1, 576 P.2d 963]; *In re Raymond P., supra,* 86 Cal.App.3d 797). A considerable line of authorities holds that the court's failure to either properly interpret or follow the law is in excess of its jurisdiction and reviewable on the People's petition for a prerogative writ (*People* v. *Superior Court (Vasquez)* (1977) 69 Cal.App.3d 14, 19 [137 Cal.Rptr. 762]; *People* v. *Superior Court (Brodie), supra,* at pp. 201-202; *People* v. *Superior Court (Lozano)* (1977) 69 Cal.App.3d 57, 61 [137 Cal.Rptr. 767]).

■ ■ We believe the instant case meets the above stated legal criteria and is thus reviewable by way of a writ. As far as the first criterion is concerned, the record is clear that the ruling of the juvenile court is predicated on its interpretation of *In re Thierry S.* (1977) 19 Cal.3d 727 [139 Cal.Rptr. 708, 566 P.2d 610], the governing case law. As discussed below, it is equally unquestionable that the interpretation accorded by the juvenile court to *Thierry* is erroneous. All this, of course, means that by misconstruing the applicable case law and by failing to follow the principles laid down therein, the juvenile court exceeded its jurisdiction.

In resolving the additional issue of whether the appellate review in dispute is barred by double jeopardy, we initially note that in the present case the doctrine of once in jeopardy is applicable if at all, only from the juvenile court's judgment dismissing the petition in the wake of the minor's application for a rehearing. The question whether double jeopardy here attaches, therefore, must be evaluated in the context of the

proceeding conducted in the juvenile court. When so reviewed, the circumstances reveal that the minor expressly waived the jurisdictional hearing in the juvenile court; that the juvenile court failed to hold a de novo hearing[7] in order to determine the guilt or innocence of the minor; and that the sole matter determined by the juvenile court was a narrow evidentiary question, i.e., whether the search and seizure of the gun was lawful.

It is, of course, well settled that double jeopardy, which is applicable also in juvenile proceedings (*Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 375 [93 Cal.Rptr. 752, 482 P.2d 664]), attaches only when the jurisdictional hearing has been " 'entered upon.' " (*Jesse W.* v. *Superior Court, supra,* 20 Cal.3d at p. 896.) It is plain, however, that where, as here, the juvenile court has failed to conduct a de novo jurisdictional hearing in order to determine the guilt or innocence of the minor, and its decision is founded merely upon a narrow review of an evidentiary ruling of the referee, double jeopardy does not attach (*Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 172]; *Jesse W.* v. *Superior Court, supra,* at p. 899).

In reaching this conclusion we are greatly aided by *United States* v. *Wilson* (1975) 420 U.S. 332 [43 L.Ed.2d 232, 95 S.Ct. 1013]. In *Wilson,* the trier of fact (jury) found defendant guilty of converting union funds to his own use. On a postverdict motion the trial judge dismissed the indictment, ruling that the delay between the offense and the indictment had prejudiced the defendant. The prosecution sought to appeal the dismissal, but the court of appeals held that double jeopardy barred review of the trial court's ruling. In reversing the conclusion of the court of appeals and holding that the ruling of the trial court was reviewable, the United States Supreme Court pointed out that double jeopardy is directed at the threat of multiple prosecutions, not at government appeals, at least where those appeals would not require a new trial. Therefore, where there is no threat of either multiple punishment or successive prosecutions, the double jeopardy clause is not offended. As a consequence, in various situations where the appellate review would not subject the defendant to a second trial, an order favoring the defendant may be subject to appellate review upon the initiative of the prosecution (*United States* v. *Wilson, supra,* at pp. 341, 344 [43 L.Ed.2d at pp. 240, 242]). Among the

---

[7]As defined in the case law, a rehearing de novo "is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held." (*Collier & Wallis, Ltd.* v. *Astor* (1937) 9 Cal.2d 202, 205 [70 P.2d 171].) At oral argument counsel for Richard C. agreed that the proceedings before the juvenile court judge did not meet this definition of a de novo hearing.

"various situations" the court especially emphasized the correction of error by the trial judge in a postverdict procedure, as follows: "[W]e continue to be of the view that the policies underlying the Double Jeopardy Clause militate against permitting the Government to appeal after a verdict of acquittal. Granting the Government such broad appeal rights would allow the prosecutor to seek to persuade a second trier of fact of the defendant's guilt after having failed with the first; it would permit him to re-examine the weaknesses in his first presentation in order to strengthen the second; and it would disserve the defendant's legitimate interest in the finality of a verdict of acquittal. *These interests, however, do not apply in the case of a postverdict ruling of law by a trial judge. Correction of an error of law at that stage would not grant the prosecutor a new trial or subject the defendant to* the harassment traditionally associated with *multiple prosecutions.* We *therefore* conclude that when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, *the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause.*" (Pp. 352-353 [43 L.Ed.2d, pp. 246-247], italics added.)

The parallel between *Wilson* and the case at bench is easily discernible. Akin to defendant in *Wilson,* the minor here was found guilty by the referee, the trier of fact, whose decision was overturned by the juvenile court judge under the pretext of correction of law. Hence, what has been said in *Wilson* with respect to the postconviction review of error of law is equally applicable in the case at bar, especially in light of the circumstance that the reversal of the juvenile court's dismissal does not require a second prosecution or a retrial, but simply the reinstatement of the order of the referee.

Our holding that the judgment of dismissal here is reviewable for lack of jurisdictional hearing in the juvenile court is further supported by *In re Donald L.* (1978) 81 Cal.App.3d 770 [146 Cal.Rptr. 720]. In *Donald L.,* the record showed that a jurisdictional hearing was calendared for hearing before a juvenile court referee. When the parties appeared for hearing, counsel for the minor made an oral motion to suppress evidence on the ground that it was unlawfully seized (Pen. Code, § 1538.5). After hearing the testimony of the arresting officer, the referee granted the section 1538.5 motion and dismissed the petition before the jurisdictional phase of the hearing was "entered upon." The juvenile court, on its own motion, ordered a rehearing of the section 1538.5 motion and ruled that the evidence had been lawfully seized. In rejecting the minor's contention that the juvenile court proceeding after the referee's dismissal of the

petition violated his right against double jeopardy, the Court of Appeal pointed out that the referee's order was entered before a jurisdictional hearing commenced, and as a consequence it was subject to further review without violating the double jeopardy clause of the Constitution. (Pp. 772-773.)

We are satisfied that all the cases in point (*Jesse W.* v. *Superior Court, supra,* 20 Cal.3d 893; *In re Edgar M., supra,* 14 Cal.3d 727; *In re James M.* (1973) 9 Cal.3d 517 [108 Cal.Rptr. 89, 510 P.2d 33]; *Richard M.* v. *Superior Court, supra,* 4 Cal.3d 370; *In re Raymond P., supra,* 86 Cal.App.3d 797) are distinguishable from the present situation. In each of those cases, the double jeopardy clause was held applicable because a duly conducted jurisdictional hearing had been "entered upon" in which the innocence of the minor was properly decided, resulting in a *dismissal* of the petition. In contrast, in the instant case the only jurisdictional hearing which occurred took place before the referee who, as we have pointed out, *sustained* the petition. However, the record is clear that in the proceeding before the judge which resulted in the dismissal of the petition, no jurisdictional hearing whatever took place. Under these circumstances, the doctrine of double jeopardy clearly failed to come into play.[8]

The second major contention of the parties relates to the legality of the search and seizure. People advance a two-pronged argument. First, it is contended that the officer had probable cause to search the minor for a weapon, and when the gun was found on respondent's person the officer became authorized to arrest him for the misdemeanor offenses committed in his presence. Second, it is argued that even if no probable cause existed to search for the weapon for the misdemeanor offenses, the circumstances present in the case gave rise at the very least to a right of detention and a right to conduct a limited search for a weapon, the detection of which provided unquestionable right to arrest the respondent and to seize the gun. Richard C., in turn, contends that an arrest for a misdemeanor offense is authorized without a warrant only if the offense was committed in the officer's "presence" (§ 625.1, subd. (a); Pen. Code, § 836; *In re Thierry S., supra,* 19 Cal.3d 727). In the instant case, continues Richard

---

[8]Since there is no element of jeopardy involved, our decision granting People a simple right of appellate review of a suppression of evidence ruling does no more than provide a procedural remedy which is statutorily available in adult criminal proceedings (Pen. Code, § 1538.5, subd. (o)). Certainly, respondent cannot suggest that such a procedure is in any way offensive to his right to due process, particularly in light of the fact that respondent's motion to suppress was expressly predicated upon Penal Code, section 1538.5.

C., the officer did not witness the commission of the offense prior to retrieving the weapon, and the pistol hidden on the minor's person was not visible to the officer prior to the search. Since "presence" entitling an officer to make a misdemeanor arrest is not merely physical proximity, but occurs only when the offense is apparent to the officer's senses (*People v. Brown* (1955) 45 Cal.2d 640, 642 [290 P.2d 528]; *Pate v. Municipal Court* (1970) 11 Cal.App.3d 721, 725 [89 Cal.Rptr. 893]), Richard C. insists that both the weapons search and the ensuing arrest of respondent must be held unlawful.

Richard C.'s contention must fail for the simple reason that in the situation here presented the officer was authorized to detain the minor for investigative purposes and to carry out a limited weapon search for his own protection. ▮ It is well settled that circumstances short of probable cause to make an arrest may justify a police officer stopping and briefly detaining a person for questioning or other limited investigation when he has reason to suspect that a crime has been committed or is being committed in his presence (*In re Tony C.* (1978) 21 Cal.3d 888, 892-893 [148 Cal.Rptr. 366, 582 P.2d 957]; *People v. Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 30 P.2d 658]; *People v. Nickles* (1970) 9 Cal.App.3d 986, 991 [88 Cal.Rptr. 763]).

In the present case, the officer had ample cause to detain the minor and carry out a preliminary investigation due to a suspected, ongoing criminal offense or offenses. As mentioned earlier, the officer was advised by a private citizen that the minor had exhibited and attempted to load a pistol in the citizen's driveway. The citizen gave the police a description of the minor possessing the gun. When the police arrived at the scene, the citizen, who had personally observed and witnessed the crime, aided the police in locating the suspect. After a short while the minor was spotted by the citizen who also identified him as the person who exhibited and loaded the gun in his driveway. In addition, the officer himself observed that the minor fit the description previously provided by the reporting citizen. These facts, of course, furnished abundant reason for the officer to suspect that the minor was involved in some criminal activity which ought to be investigated (*In re Tony C., supra*, 21 Cal.3d 888, 893).

It is equally indisputable that, having reasonable grounds upon which to detain and investigate, the police officer was entitled to make a limited protective search for weapons. ▮ As emphasized in cases, in carrying out an investigation of crime, the police may take reasonable steps to protect themselves from violence and may submit the person under

investigation to a weapons search (*Adams* v. *Williams* (1972) 407 U.S. 143, 145-148 [32 L.Ed.2d 612, 616-618, 92 S.Ct. 1921]; *People* v. *Green* (1971) 15 Cal.App.3d 766, 772 [93 Cal.Rptr. 433]; *People* v. *Turner* (1969) 2 Cal.App.3d 632, 635 [82 Cal.Rptr. 763]), because " 'The right to investigate gives rise to the right to conduct a reasonable search for weapons in order to protect the safety of the officers' " (*People* v. *Lumar* (1968) 267 Cal.App.2d 900, 904 [73 Cal.Rptr. 682]), and because "a failure to make such a search, in many cases, might mean death to policemen" (*People* v. *Dumas* (1967) 251 Cal.App.2d 613, 617 [59 Cal.Rptr. 541]; see also *People* v. *Turner, supra,* at p. 636).

Once the pistol was found on respondent's person, as a result of a justified detention and a limited, protective search for a weapon, it became apparent that the misdemeanor offenses charged in the petition were committed in the officer's presence both within the meaning of the statute (§ 625.1; Pen. Code, § 836),[9] and the case law which requires that in case of a warrantless arrest for a misdemeanor the officer must personally observe the commission of the offense (*People* v. *Brown, supra,* 45 Cal.2d 640, 642; *People* v. *Green, supra,* 15 Cal.App.3d at p. 771), or as the court put it in *Pate* v. *Municipal Court, supra,* 11 Cal.App.3d 721, 725, the crime must be "apparent to the officer's senses." As a consequence, respondent's arrest for the commission of observable misdemeanors and the admission of the gun in evidence must be held eminently correct (*People* v. *Green, supra,* at p. 773).

We entertain no doubt that *In re Thierry S., supra,* 19 Cal.3d 727, is patently distinguishable from the case at bar. In *Thierry,* an officer went to a school yard in response to a call from a citizen. When the officer arrived, the minor and another juvenile were seated on the ground, their legs bound by a rope. The citizen informed the officer that he had detained the two juveniles because he suspected that the juveniles had vandalized a nearby schoolroom shortly before his arrival. Based solely on the report of the citizen and inspection of the damaged schoolroom, the officer placed the minors under arrest for misdemeanor vandalism

---

[9]Section 625.1 provides in part that "A peace officer may, without a warrant, take a minor under the age of 18 into temporary custody as a person described in Section 602: [¶] (a) Whenever the officer has reasonable cause to believe that the minor has committed a public offense *in his presence.*" (Italics added.)

Section 836 of the Penal Code likewise specifies in pertinent part that "A peace officer may make an arrest in obedience to a warrant, or may, pursuant to the authority granted him by the provisions of Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, without a warrant, arrest a person: [¶] 1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense *in his presence.*" (Italics added.)

(Pen. Code, § 594, subd. (c)). As a result of the arrest, the officer discovered evidence which connected the juveniles with vandalism of a number of railroad signal boxes. The latter was the sole basis of the section 602 finding. The Supreme Court concluded that section 625.1 prohibits warrantless arrests of juveniles for misdemeanors unless the arresting officer actually observes the commission of the offense. Since the officer in *Thierry* had not observed the commission of the offense, the warrantless arrest of the juveniles was unlawful, and the evidence seized as a result of the arrest was subject to suppression (pp. 744-745).

It is all but obvious that there is a striking difference between the present case and *Thierry*. As appears from the above factual recitation, when the arresting officer arrived at the scene in *Thierry,* the vandalism, the subject matter of the section 602 charge, was obviously completed. By contrast, in the case at bench, the possession of the loaded weapon with which the minor was accused in the petition was an ongoing offense, and when it was discovered as a result of a lawful detention and weapon search, the commission of the crime was physically observable by the officer. Since it is thus clear that the commission of the offense here was sensed and eyewitnessed by the officer, both the arrest and the seizure of the gun were lawful.

In light of the foregoing discussion, Richard C.'s remaining argument calls for but a short answer. The contention that he should have been given *Miranda* warnings before the gun was seized, defies the unbroken line of cases which uniformly hold that the detention of a suspect is not an accusatory, but rather an investigatory step (*People* v. *Manis* (1969) 268 Cal.App.2d 653, 667 [74 Cal.Rptr. 423]), and that where, as here, the officer is entitled to detain the suspect and has reason to believe that he is armed, the officer may conduct a weapons search, limited in scope, to his protective purpose (*Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 313]; *Adams* v. *Williams, supra,* 407 U.S. 143).

Let a writ of mandate issue directing the juvenile court to set aside its judgment of dismissal and to reinstate the February 28 and March 24, 1978, orders of the referee. The appeal in 1 Civil 44164 is dismissed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied March 23, 1979. The petition of the real party in interest for a hearing by the Supreme Court was denied April 19, 1979. Tobriner, J., Mosk, J., and Newman, J., were of the opinion that the petition should be granted.