[No. D038525. Fourth Dist., Div. One. Nov. 26, 2002.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent;
MANUEL G., Real Party in Interest.

918

## COUNSEL

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez and Elizabeth S. Voorhies, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Richard P. Siref, under appointment by the Court of Appeal, for Real Party in Interest.

## OPINION

**McDONALD, J.**—The People appeal an order granting the petition of Manuel G. to seal his juvenile records pursuant to Welfare and Institutions

Code section 781.[1] On appeal the People contend the court erred by concluding amendments to section 781[2] enacted in 2000 pursuant to Proposition 21 did not apply to preclude sealing of juvenile records relating to Manuel's Penal Code section 288, subdivision (b) offense in 1995. The court concluded application of the 2000 amendment would violate the state and federal Constitutions' equal protection clauses and prohibitions against ex post facto laws. Manuel argues there is no statutory basis on which the People may file an appeal of the order and we therefore should dismiss their appeal. Because the People do not have a statutory basis on which to appeal

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Section 781, as amended in 2000 by Proposition 21, provides in pertinent part: "(a) In any case in which a petition has been filed with a juvenile court to commence proceedings to adjudge a person a ward of the court . . . , the person or the county probation officer may, five years or more after the jurisdiction of the juvenile court has terminated as to the person, . . . or, in any case, at any time after the person has reached the age of 18 years, petition the court for sealing of the records, including records of arrest, relating to the person's case, in the custody of the juvenile court and probation officer and any other agencies, including law enforcement agencies, and public officials as the petitioner alleges, in his or her petition, to have custody of the records. . . . If, after hearing, the court finds that since the termination of jurisdiction . . . , he or she has not been convicted of a felony or of any misdemeanor involving moral turpitude and that rehabilitation has been attained to the satisfaction of the court, it shall order all records, papers, and exhibits in the person's case in the custody of the juvenile court sealed, including the juvenile court record, minute book entries, and entries on dockets, and any other records relating to the case in the custody of other agencies and officials as are named in the order. In any case in which a ward of the juvenile court is subject to the registration requirements set forth in Section 290 of the Penal Code, a court, in ordering the sealing of the juvenile records of the person, shall also provide in the order that the person is relieved from the registration requirement and for the destruction of all registration information in the custody of the Department of Justice and other agencies and officials. *Notwithstanding any other provision of law, the court shall not order the person's records sealed in any case in which the person has been found by the juvenile court to have committed an offense listed in subdivision (b) of Section 707 when he or she had attained 14 years of age or older.* Once the court has ordered the person's records sealed, the proceedings in the case shall be deemed never to have occurred, and the person may properly reply accordingly to any inquiry about the events, the records of which are ordered sealed. . . [¶] . . . [¶] (d) Unless for good cause the court determines that the juvenile court record shall be retained, the court shall order the destruction of a person's juvenile court records that are sealed pursuant to this section as follows: five years after the record was ordered sealed, if the person who is the subject of the record was alleged or adjudged to be a person described by Section 601; or when the person who is the subject of the record reaches the age of 38 if the person was alleged or adjudged to be a person described by Section 602, *except that if the subject of the record was found to be a person described in Section 602 because of the commission of an offense listed in subdivision (b), of Section 707, when he or she was 14 years of age or older, the record shall not be destroyed.* Any other agency in possession of sealed records may destroy its records five years after the record was ordered sealed. . . ." (Italics added.) Before Proposition 21's amendments, section 781, subdivision (a) prohibited the sealing of juvenile records relating to a section 707, subdivision (b) offense only " 'until at least six years have elapsed since commission of [that] offense.' " (Historical and Statutory Notes, 73A West's Ann. Welf. & Inst. Code (2002 supp.) foll. § 781, pp. 81-82.)

the order, we dismiss the appeal. Nevertheless, we treat the People's appeal as a petition for writ of mandate and grant that petition.

FACTUAL AND PROCEDURAL BACKGROUND

In July 1996 a section 602 petition was filed charging Manuel with two counts of committing a forcible lewd and lascivious act on a child under the age of 14 (Pen. Code, § 288, subd. (b)). Manuel was 15 years old in December 1995 at the time of the alleged acts. After Manuel admitted one count, the court dismissed the other count and declared him a ward of the juvenile court. It granted him probation until his 18th birthday or until earlier terminated by the court. He was placed in the custody of his mother.

In August 1998 the court terminated Manuel's probation and wardship.

In March 2001 Manuel filed a section 781 petition requesting an order sealing the records relating to his juvenile case. The probation department opposed Manuel's petition, arguing that Proposition 21's amendments to section 781, effective March 8, 2000, prohibit the sealing of records of persons who committed an offense listed in section 707, subdivision (b), including a Penal Code section 288, subdivision (b) offense, if the person was 14 years of age or older at the time of the offense. The district attorney also argued that section 781, as amended by Proposition 21, prohibits the sealing of Manuel's records.

On May 8 the court granted the petition, finding that the application of amended section 781 to Manuel's case would violate the state and federal Constitutions' equal protection clauses and prohibitions against ex post facto laws. The court stayed its order to allow the district attorney to file a petition for writ of mandate challenging the order.

On August 2, after we denied the district attorney's petition for writ of mandate, the court removed its stay.[3]

On August 3 the People filed a notice of appeal of the order sealing Manuel's juvenile records.[4]

---

[3]We take judicial notice of our July 18, 2001, order denying that petition and stating: "Petitioner has an adequate remedy by way of appeal." (Evid. Code, §§ 452, subd. (d), 459.)

[4]The notice of appeal mistakenly refers to the date of that order as being "entered August 2, 2001." The order was entered on May 8, but was stayed until August 2.

DISCUSSION

I

*The Order Is Not Appealable by the People Under Section 800*

■ The People's brief contends their appeal "is authorized by section 800, subdivision (b)(2)," which provides that the People may appeal "[a]n order made after judgment entered pursuant to Section 777 or 785." Manuel argues that because the order in this case was *not* made after a judgment entered pursuant to either section 777 or 785, section 800, subdivision (b)(2) does not apply and the People's appeal must be dismissed.

A

■ An appellate court has "no authority to hear an appeal in the absence of appellate jurisdiction." (*In re Almalik S.* (1998) 68 Cal.App.4th 851, 854 [80 Cal.Rptr.2d 619].) Appeals from juvenile court orders and judgments are permitted only as provided by statute. "The People's right to appeal in . . . juvenile court proceedings is conferred exclusively by statute." (*People v. Superior Court (Arthur R.)* (1988) 199 Cal.App.3d 494, 497 [244 Cal.Rptr. 841].) "It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute. [Citations.] The orders, judgments and decrees of a juvenile court [that] are appealable are restricted to those enumerated in section 800 [citations] . . . ." (*People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 709 [135 Cal.Rptr. 392, 557 P.2d 976], disapproved on another ground in *People v. Green* (1980) 27 Cal.3d 1, 33-34 [164 Cal.Rptr. 1, 609 P.2d 468]; *In re Almalik S., supra,* at p. 854.)

Section 800 provides:

"(a) A judgment in a proceeding under Section 601 or 602 may be appealed from, *by the minor,* in the same manner as any final judgment, and any subsequent order may be appealed from, *by the minor,* as from an order after judgment. Pending appeal of the order or judgment, the granting or refusal to order release shall rest in the discretion of the juvenile court. . . . [¶] . . . [¶]

"(b) *An appeal may be taken by the people from any of the following:*

"(1) A ruling on a motion to suppress pursuant to Section 700.1 even if the judgment is a dismissal of the petition or any count or counts of the

petition. However, no appeal by the people shall lie as to any count which, if the people are successful, will be the basis for further proceedings subjecting any person to double jeopardy.

"(2) *An order made after judgment entered pursuant to Section 777 or 785.*

"(3) An order modifying the jurisdictional finding by reducing the degree of the offense or modifying the offense to a lesser offense.

"(4) An order or judgment dismissing or otherwise terminating the action before the minor has been placed in jeopardy, or where the minor has waived jeopardy. If, pursuant to this paragraph, the people prosecute an appeal of the decision or any review of that decision, it shall be binding upon the people and they shall be prohibited from refiling the case which was appealed.

"(5) The imposition of an unlawful order at a dispositional hearing, whether or not the court suspends the execution of the disposition.

"(c) Nothing contained in this section shall be construed to authorize an appeal from an order granting probation. Instead, the people may seek appellate review of any grant of probation whether or not the court imposes disposition, by means of a petition for a writ of mandate or prohibition which is filed within 60 days after probation is granted. The review of any grant of probation shall include review of any order underlying the grant of probation. . . ." (Italics added.)

Section 777 relates only to an order that changes or modifies a previous custody order: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after a noticed hearing. . . ."

Section 785 allows a petition for termination or modification of a juvenile's wardship *if,* inter alia, the juvenile is found to be unfit for treatment under juvenile court law regarding an alleged *subsequent* offense: "(a) Where a minor is a ward of the juvenile court, the wardship did not result in the minor's commitment to the Youth Authority, *and the minor is found not to be a fit and proper subject to be dealt with under the juvenile court law with respect to a subsequent allegation of criminal conduct,* any parent or other

person having an interest in the minor, or the minor, through a properly appointed guardian, the prosecuting attorney, or probation officer, may petition the court in the same action in which the minor was found to be a ward of the juvenile court for a hearing for an order to terminate or modify the jurisdiction of the juvenile court. . . ." (Italics added.)

B

The People's appeal challenges the court's section 781 order sealing Manuel's juvenile records. That order was *not* "made after [a] judgment entered pursuant to Section 777 or 785." (§ 800, subd. (b)(2).) The record does not contain any order or judgment *changing* or modifying Manuel's *custody* under section 777. On the contrary, the record shows Manuel was placed in his mother's custody and successfully completed his probation, presumably without any change in that custody. The record also does not contain any order or judgment disposing of a section 785 petition to terminate Manuel's wardship based on a finding he was unfit for juvenile court treatment regarding a *subsequent* allegation of criminal conduct. On the contrary, the record shows Manuel successfully completed his probation in this case and does not contain any document showing he committed a subsequent criminal act. Therefore, the section 781 order sealing Manuel's juvenile records is *not* appealable by the People under section 800, subdivision (b)(2). Furthermore, our review of section 800, subdivision (b) shows that none of its other provisions apply in the circumstances of this case to allow the People to appeal the section 781 order sealing Manuel's juvenile records. Because section 800, subdivision (b) provides the exclusive basis for the People's appeal of juvenile court orders and judgments, we are without jurisdiction to consider the People's appeal of the section 781 order.[5] (*People v. Chi Ko Wong, supra*, 18 Cal.3d at p. 709; *In re Almalik S., supra*, 68 Cal.App.4th at p. 854; *People v. Superior Court (Arthur R.), supra*, 199 Cal.App.3d at p. 497.) Accordingly, we must dismiss their appeal. (*In re Almalik S.*, at p. 854.)

II

*We Nevertheless Treat the People's Appeal as a Petition for Writ of Mandate*

Although the People do not expressly request that we treat their appeal as a petition for writ of mandate, we nevertheless conclude they impliedly requested such treatment based on the district attorney's earlier petition for

---

[5]It is now apparent that in denying the district attorney's petition for writ of mandate we incorrectly concluded the People have an adequate remedy by way of appeal.

writ of mandate and/or prohibition (which we denied incorrectly on the ground there was an adequate remedy by way of appeal). Furthermore, we conclude the interests of justice support our treatment of this appeal as a petition for writ of mandate.

 "An appellate court has discretion to treat a purported appeal from a nonappealable order as a petition for writ of mandate, but that power should be exercised only in unusual circumstances. [Citation.]" (*H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366-1367 [118 Cal.Rptr.2d 71].) In juvenile wardship cases, "[t]he test controlling the People's entitlement to review by writ is derived from *People v. Superior Court* (*Howard*) (1968) 69 Cal.2d 491, 501 [72 Cal.Rptr. 330, 446 P.2d 138]. The test employs two criteria. First, the challenged trial court order must be an act 'in excess of jurisdiction.' Second, upon a careful balancing, the need to correct judicial errors prejudicing the People must outweigh the conflicting threat of harassment to the accused. The second criterion must be resolved against writ review whenever granting the writ would threaten defendant with double jeopardy." (*People v. Superior Court* (*Arthur R.*), *supra*, 199 Cal.App.3d at p. 502.) Most courts have interpreted *Howard*'s use of the phrase "excess of jurisdiction" as meaning "any misinterpretation, misapplication or refusal to follow applicable constitutional, statutory or case law authority." (*Ibid.*; *In re Richard C.* (1979) 89 Cal.App.3d 477, 484 [152 Cal.Rptr. 787] ["A considerable line of authorities holds that the court's failure to either properly interpret or follow the law is in excess of its jurisdiction and reviewable on the People's petition for a prerogative writ [citations]."].)

 Because this case involves the issue of whether the trial court correctly interpreted and applied constitutional, statutory and case law in granting Manuel's section 781 petition, there is a question whether the court acted in "excess of jurisdiction" as that phrase in *Howard* has been interpreted. Therefore, the first requirement for writ review is satisfied. Furthermore, because section 781 relates to the sealing of juvenile records, granting a writ of mandate in this case would not threaten Manuel with double jeopardy. (*People v. Superior Court* (*Arthur R.*), *supra*, 199 Cal.App.3d at p. 502.) Therefore, the second requirement is satisfied and there is no impediment to our consideration of the People's appeal as a petition for writ of mandate.

To the extent civil writ considerations apply, we conclude the People have no plain, speedy, and adequate remedy at law to review the trial court's order. (*In re Albert B.* (1989) 215 Cal.App.3d 361, 373 [263 Cal.Rptr. 694].) Furthermore, because we previously denied the district attorney's writ petition on the incorrect ground there was an adequate remedy by way of appeal,

it would "further the interests of judicial economy to treat the appeal as a petition for [writ] relief" rather than require the People to file another writ petition setting forth the same arguments made in their brief on appeal. (*Ibid.*) Also, "(1) the briefs and record before us contain in substance all the elements prescribed by rule 56 of the California Rules of Court for an original mandate proceeding[,] and (2) there are extraordinary circumstances justifying the exercise of [our power to treat the appeal as a petition for writ of mandate]. [Citations.]" (*Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698 [86 Cal.Rptr.2d 657].) ▆▆ ▬▬ ▬ Therefore, in the unusual circumstances of this case, we conclude we should reach the merits of the People's appeal by treating the appeal as a petition for writ of mandate.[6] (*Angell,* at p. 698; *H. D. Arnaiz, Ltd. v. County of San Joaquin, supra,* 96 Cal.App.4th at pp. 1366-1367; *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744-747 [29 Cal.Rptr.2d 804, 872 P.2d 143]; *People v. Gallardo* (2000) 77 Cal.App.4th 971, 976 [92 Cal.Rptr.2d 161]; *People v. Garrett* (1998) 67 Cal.App.4th 1419, 1423 [79 Cal.Rptr.2d 803]; *People v. Gonter* (1981) 125 Cal.App.3d 333, 338 [178 Cal.Rptr. 66]; *In re Richard C., supra,* 89 Cal.App.3d at pp. 483-484; *People v. Chi Ko Wong, supra,* 18 Cal.3d at pp. 712-714; *In re Albert B., supra,* at pp. 372-373; *Olson v. Cory* (1983) 35 Cal.3d 390, 400-401 [197 Cal.Rptr. 843, 673 P.2d 720].)

### III

#### *Application of Amended Section 781 Does Not Violate the Prohibition Against Ex Post Facto Laws*

▆ The People contend the trial court erroneously concluded that application of amended section 781 to Manuel's petition for an order sealing his juvenile records would violate the constitutional prohibition against ex post facto laws.

#### A

▆ Article I, section 10, clause 1 of the United States Constitution states in part: "No State shall . . . pass any . . . ex post facto Law . . . ." Article I, section 9 of the California Constitution similarly states that an "ex post facto law . . . may not be passed." We interpret the California ex post facto provision in the same manner as the federal provision. (*People v. Castellanos* (1999) 21 Cal.4th 785, 790 [88 Cal.Rptr.2d 346, 982 P.2d 211].) In *Collins*

---

[6]The fact that the trial court has not been joined as a party to the appeal does not defeat our power to treat the appeal as a petition for a writ of mandate. (*In re Albert B., supra,* 215 Cal.App.3d at p. 373.) "[T]here is no indication the trial court would be more than a nominal party to the writ proceeding." (*H. D. Arnaiz, Ltd. v. County of San Joaquin, supra,* 96 Cal.App.4th at p. 1367.)

*v. Youngblood* (1990) 497 U.S. 37 [110 S.Ct. 2715, 111 L.Ed.2d 30], the United States Supreme Court restated its interpretation of the ex post facto clause: "Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." (*Id.* at p. 43 [110 S.Ct. at p. 2719].) "[A]n ex post facto violation does not occur simply because a criminal defendant loses ' "substantial protections" ' [citation], or suffers some ' "disadvantage" ' after the crime occurs. [Citations.]" (*People v. Ansell* (2001) 25 Cal.4th 868, 884 [108 Cal.Rptr.2d 145, 24 P.3d 1174].) *Ansell* stated: "[A] substantial and disadvantageous change is prohibited only if it 'inflicts greater *punishment,* than the law annexed to the crime, when committed.' [Citation.] Unless the consequences are penal in nature, defendants cannot rely on statutes in existence at the time of the crime, or otherwise complain of oppressive retroactive treatment. [Citations.]" (*Ansell, supra,* 25 Cal.4th at p. 884, italics added in *Ansell.*) *Castellanos* noted: "[T]he method of analyzing what constitutes punishment varies depending upon the context in which the question arises. But two factors appear important in each case: whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent." (*Castellanos, supra,* at p. 795, fn. omitted.) In determining whether a law is "so punitive" in either purpose or effect that it raises ex post facto concerns, the United States Supreme Court "has considered such factors as whether the challenged law imposes an affirmative disability or restraint; whether any such sanction has been historically regarded as punishment; whether the law promotes the traditional aims of punishment (i.e., retribution and deterrence) through means commonly used in criminal statutes (e.g., imposing culpability for proscribed acts and requiring scienter); whether the law bears a rational connection to legitimate nonpenal aims; and whether it appears excessive in relation to such aims. [Citations.]" (*Ansell, supra,* at pp. 885-886.)

In *People v. Acuna* (2000) 77 Cal.App.4th 1056 [92 Cal.Rptr.2d 224], the court concluded "a defendant who has been denied expungement of his conviction by an amendment to the Penal Code enacted after he pled guilty has not been subjected to an ex post facto law." (*Id.* at p. 1058, fn. omitted.) In *Acuna,* the defendant pleaded guilty in 1993 to one count of committing a lewd act on a child under age 14 in violation of Penal Code section 288, subdivision (a) and was granted probation. (*Ibid.*) At the time of the defendant's plea and sentencing, Penal Code section 1203.4 allowed him on completion of his probation to apply for expungement of his conviction. (*Ibid.*) However, before completion of the defendant's probation, Penal Code section 1203.4 was amended to prohibit expungement of Penal Code section 288 convictions. (*Acuna.* at p. 1059.) On completion of his probation, the

defendant moved for expungement of his conviction and the trial court denied the motion based on the amendment to Penal Code section 1203.4. (*Acuna*, at p. 1059.) On appeal, *Acuna* rejected the defendant's contention that application of amended Penal Code section 1203.4 would violate the constitutional prohibition against ex post facto laws. (*Acuna*, at pp. 1059-1060.) It reasoned the Legislature did not intend that statutory amendment to be punitive. (*Ibid.*) Rather, its legislative intent appeared to be public safety, stating: "Our Legislature has determined that public safety is enhanced if those having been convicted of child molestation are not able to truthfully represent that they have no such conviction." (*Id.* at p. 1060.) *Acuna* also concluded that the statutory amendment's nature and effect were not so punitive that it be considered punishment. (*Ibid.*) Even if expungement were permitted, *Acuna* noted the defendant nevertheless would be required to register as a sex offender, would have to disclose his conviction in applying for a professional license or public office, and could not own or possess a concealable firearm. (*Ibid.*) Furthermore, under Penal Code section 1203.4, subdivision (a), his conviction could still be used as a prior conviction. (*Ibid.*) *Acuna* stated: "There is no doubt that being unable to expunge [the defendant's] conviction places some burden on him. He cannot truthfully represent to friends, acquaintances and private sector employers that he has no conviction. But such a representation from a person convicted of molesting a child might give the public a false sense of security. It is this false sense of security the statute seeks to eliminate." (*Acuna, supra,* 77 Cal.App.4th at p. 1060.) Accordingly, because the amended statute precluding expungement of Penal Code section 288 convictions was not punitive in intent, nature or effect, *Acuna* concluded the ex post facto clause did not bar its application to the defendant. (*Acuna*, at p. 1060.)

*People v. Ansell, supra,* 25 Cal.4th 868 reached the same conclusion regarding an amendment to Penal Code section 4852.01 that precludes convicted sex offenders from obtaining certificates of rehabilitation. (*Ansell*, at pp. 871-872, 893.) *Ansell* concluded: "[T]he amendment . . . does not impose punishment or otherwise implicate ex post facto concerns. We decline to invalidate this provision insofar as it withholds the certificate of rehabilitation procedure . . . from convicted sex offenders who, like [the defendant], committed their crimes prior to the amendment's effective date." (*Id.* at p. 893.)

*People v. Castellanos, supra,* 21 Cal.4th 785 also rejected an ex post facto challenge of an amendment to Penal Code section 290 that requires the defendant to register as a sex offender for certain crimes he committed before that amendment. (*Castellanos*, at pp. 788-799.) *Castellanos* concluded

the Legislature did not intend the registration requirement to constitute punishment. (*Id.* at p. 796.) It further concluded the registration requirement was not so punitive in nature or effect that it must be regarded as punishment, despite the substantial burden it imposed on the convicted offender. (*Id.* at p. 799.)[7]

## B

In granting Manuel's section 781 petition, the trial court concluded that Proposition 21's amendments to section 781 in 2000 did not apply to his commission in 1995 of a lewd act under Penal Code section 288, subdivision (b) because those amendments are punitive in nature and therefore their application would violate the constitutional prohibition against ex post facto laws. The court declined to follow the reasoning in *Acuna* and instead relied on *Doe I v. Otte* (9th Cir. 2001) 259 F.3d 979, certiorari granted Feb. 19, 2002, 534 U.S. 1126 [122 S.Ct. 1062, 151 L.Ed.2d 966], which concluded Alaska's sex offender registration statute was punitive in effect and therefore violated the prohibition against ex post facto laws. The trial court also cited *In re S. A.* (1970) 6 Cal.App.3d 241, 246 [85 Cal.Rptr. 775], which concluded that section 781's provisions for sealing juvenile records showed a legislative intent to protect juveniles from future prejudice.

## C

We conclude the trial court erred by finding Proposition 21's amendments to section 781 violate the constitutional prohibition against ex post facto laws. Assuming arguendo that those amendments apply retroactively, Manuel has not shown that the legislative intent of those amendments was to increase punishment or that their purpose, nature or effect is so punitive that they must be considered punishment for purposes of the ex post facto clause.[8] Although Manuel cites provisions from certain documents relating to the legislative history of Proposition 21, none of those provisions support a reasonable inference that the legislative intent of the specific amendments

---

[7] *People v. Bailey* (2002) 101 Cal.App.4th 238 [123 Cal.Rptr.2d 729] applied *Castellano*'s reasoning in reaching its conclusion that a gang registration requirement as a condition of the defendant's probation under Penal Code section 186.30, effective in March 2000 by the passage of Proposition 21, did not violate the prohibition against ex post facto laws. (*Bailey,* at pp. 241-244.)

[8] The People contend Proposition 21's amendments to section 781 are prospective, and not retroactive, because they apply only to section 781 petitions for sealing juvenile records that are filed on or after Proposition 21's effective date of March 8, 2000. Because we dispose of the ex post facto issue on another ground, we need not and do not address that contention.

to section 781 was punitive.[9] Proposition 21's amendments to section 781 are only part, and in our estimation only a *minor* part, of the overall provisions of that multifaceted initiative. Proposition 21's primary purpose is reflected in its title, Gang Violence and Juvenile Crime Prevention Act of 1998. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 574 [117 Cal.Rptr.2d 168, 41 P.3d 3], citing Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 1, p. 119.) Although section 2 of Proposition 21 refers to the desirability of eliminating confidentiality in some juvenile proceedings to hold juvenile offenders more accountable for their actions, it also refers to many other goals that are unrelated to section 781. (*Manduley*, *supra*, at p. 574.) "Sections 3 through 13 of the initiative are related to criminal gang activity." (*Ibid.*). In particular, "[s]ection 11 amends Penal Code section 190.2 to add gang-related murder as a special circumstance permitting the imposition of the death penalty or a sentence of life without the possibility of parole." (*Ibid.*) "Sections 14 through 17 of Proposition 21 amend portions of the Three Strikes law." (*Ibid.*) Sections 15 and 17 modify the lists of violent and serious offenses for which enhanced sentences are required. (*Ibid.*) *Manduley* describes Proposition 21's changes to the juvenile justice system as follows: "In addition to the revisions related to charging minors in criminal court and restricting juvenile court dispositions for certain minors, changes made by these sections [i.e., sections 18 through 34] include limitations on the confidentiality of juvenile criminal records, restrictions on the prehearing release of minors accused of specified offenses, and revisions to various procedures and evidentiary rules in juvenile wardship proceedings." (*Manduley*, *supra*, 27 Cal.4th at p. 575.) *Manduley*'s discussion of the wide-ranging provisions of Proposition 21 shows that the initiative's amendments to section 781 were only a minor part of its overall provisions and objectives. (*Manduley*, at pp. 574-579.) Except for general references to those amendments, *Manduley* does not specifically discuss either their substantive provisions or their legislative purpose. (*Id.* at pp. 574-575.) In contrast, it specifically discusses the more substantive provisions regarding gang-related crime and the "Three Strikes" law, many of which are clearly punitive. (*Id.* at pp. 574-581.) Therefore, although punishment for juvenile crime may be a major purpose of Proposition 21, there is nothing in its language or legislative history that shows punishment was the legislative purpose of its amendments to section 781.

Manuel also does not show that the purpose, nature or effect of the amendments to section 781 is so punitive that they must be considered

---

[9]Although Manuel cites certain documents relating to the legislative history of Proposition 21, he has not requested that we take judicial notice of those documents. Therefore, we decline to consider those documents. In any event, had we considered those documents, we nevertheless would conclude they do not support his assertion that the legislative intent of the amendments to section 781 was punitive.

punishment for purposes of the ex post facto clause. The amendments do *not* impose an *affirmative* disability or restraint. (*People v. Ansell, supra,* 25 Cal.4th at p. 885.) Rather, they merely preclude existing juvenile records from being sealed and possibly destroyed. Any indirect disability from the inability to have juvenile records sealed and possibly destroyed is a negative, not affirmative, disability. Furthermore, inability to petition for sealing of juvenile records has *not* been "historically regarded as punishment." (*Ibid.*) Punishment historically consists of imprisonment and fines, not an inability to have sealed records of a past offense for which such punishment has already been imposed and completed. Also, contrary to Manuel's assertion, the inability to petition for sealing of juvenile records does *not* "promote[] the traditional aims of punishment (i.e., retribution and deterrence) through means commonly used in criminal statutes (e.g., imposing culpability for proscribed acts and requiring scienter)." (*Id.* at pp. 885-886.) Proposition 21's amendments to section 781 do not impose any culpability on juveniles for their past juvenile offenses (much less for a current act of filing a petition to have a juvenile record sealed). Those amendments do not appear to have any goal of retribution or deterrence. It is unlikely that a juvenile, when committing a section 707, subdivision (b) offense (e.g., Pen. Code, § 288, subd. (b), forcible lewd act on a child under age 14), would be deterred by knowledge that if he or she is found to have committed such offense and is subjected to a juvenile court wardship that he or she may not be able to have related juvenile records sealed thereafter. Also, the inability to have sealed juvenile records of a past offense cannot reasonably be viewed as retribution for that past offense. Furthermore, the amendments to section 781 appear to "bear[] a rational connection to legitimate nonpenal aims." (*Ansell,* at p. 886.) The inability of juveniles to have their records of certain juvenile offenses sealed and possibly destroyed appears to serve regulatory purposes. Although such juvenile records generally may not be disclosed to the public as Manuel notes (see § 827 et seq.), those records nevertheless may provide useful information to persons authorized to receive disclosure (e.g., law enforcement officers, prosecutors, and court personnel) in future investigations and prosecutions regarding a juvenile. Also, Proposition 21's amendments to section 781 eliminate the ability of certain offenders to avoid Penal Code section 290's sex offender registration requirements by having juvenile records of past offenses sealed, which former section 781, subdivision (a) expressly allowed. By precluding the sealing of records of section 707, subdivision (b) offenses by persons who are 14 years of age or older, those amendments ensure that those persons who commit certain sex offenses (e.g., Pen. Code, § 288, subd. (b)) will remain subject to the registration provisions of Penal Code section 290 and will preclude destruction of that registration information in the future. In this manner, as in *Castellanos* and *Bailey,* the amendments further the regulatory purpose of public safety and

are not punitive. (*People v. Castellanos, supra*, 21 Cal.4th at pp. 791-799; *People v. Bailey, supra*, 101 Cal.App.4th at pp. 243-244.) Finally, Proposition 21's amendments to section 781 are not excessive in relation to those legitimate nonpenal aims. (*Ansell, supra*, at p. 886.) Those amendments appear to be appropriate for accomplishment of their legitimate nonpenal goals. Considering all of the factors set forth in *Ansell*, we conclude amended section 781 is not so punitive in purpose, nature or effect to raise ex post facto concerns. (*Ansell*, at p. 885.)

We conclude the reasoning in *People v. Acuna, supra*, 77 Cal.App.4th 1056 provides substantial support for our conclusion that amended section 781 does not violate the prohibition against ex post facto laws.[10] Expungement of adult offenders' criminal records under Penal Code section 1203.4 is similar to sealing of juvenile offenders' records under section 781 in both nature and effect. *Acuna* concluded "a defendant who has been denied expungement of his conviction by an amendment to the Penal Code enacted after he pled guilty has not been subjected to an ex post facto law." (*Acuna*, at p. 1058, fn. omitted.) *Acuna* stated: "There is no doubt that being unable to expunge [the defendant's] conviction places some burden on him. He cannot truthfully represent to friends, acquaintances and private sector employers that he has no conviction. But such a representation from a person convicted of molesting a child might give the public a false sense of security. It is this false sense of security the statute seeks to eliminate." (*Acuna, supra*, 77 Cal.App.4th at p. 1060.) Like the defendant in *Acuna*, Manuel will be precluded from truthfully representing to friends, acquaintances and private sector employers that he has no juvenile offenses under section 707, subdivision (b). To that extent, along with the Penal Code section 290 registration provisions noted *ante*, amended section 781 furthers public safety and is not punitive.

Furthermore, *In re S. A., supra*, 6 Cal.App.3d 241 does not require or support a different result in this case. That case is inapposite to this case and did not involve the issue of ex post facto laws. Manuel cites it merely for the principle that section 781 shows a legislative intent to protect minors from future prejudice resulting from their juvenile records. We presume that *general* legislative intent, as discerned by *In re S. A.* in 1970, continues to apply regarding section 781's provisions allowing persons to petition for sealing of their juvenile records. However, the more recent and specific

---

[10]The trial court rejected *Acuna* in favor of following the United States Ninth Circuit Court of Appeals decision in *Doe I v. Otte, supra*, 259 F.3d 979, which dealt with Alaska's sex offender registration statute. However, the United States Supreme Court granted a writ of certiorari in *Otte* after the trial court's decision in this case. (*Doe I v. Otte, supra*, 259 F.3d 979, cert. granted Feb. 19, 2002, 534 U.S. 1126.)

intent underlying Proposition 21's amendments to section 781 prevail over that general intent.

We conclude Proposition 21's amendments to section 781 do not violate the constitutional prohibitions against ex post facto laws.

IV

*Application of Amended Section 781 Does Not Violate the Equal Protection Clause*

 The People also contend the trial court erred by concluding amended section 781 violates the equal protection clauses of the United States and California Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).)

A

In granting Manuel's section 781 petition, the trial court also concluded that amended section 781 violated the equal protection clause:

"[T]he amendments [to] . . . section 781 . . . prohibit[] ever sealing all of those many crimes listed in [section] 707[, subdivision] (b), over 30 or 35 of them . . . . It's such a sweeping prohibition and indeed prohibits those convictions only for juveniles and not for adults.

"Indeed, the *Acuna* case points out that many of the crimes that are listed in [section] 707[, subdivision] (b) are expungable for adults under Penal Code [section] 1203.4, but are not expungable or sealable for juveniles, which leads me to believe that [amended section 781] indeed violates the equal protection laws of the United States and of the California Constitution."

B

 "In order to establish a meritorious claim under the equal protection provisions of our state and federal Constitutions appellant must first show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. [Citation.] Equal protection applies to ensure that persons similarly situated with respect to the legitimate purpose of the law receive like treatment; equal protection does not require identical treatment." (*People v. Green* (2000) 79 Cal.App.4th 921, 924 [94 Cal.Rptr.2d 355].)

■ The People assert, and Manuel does not refute, that he lacks standing to assert an equal protection claim in the circumstances of this case. ■ " 'One who seeks to raise a constitutional question must show that his rights are affected injuriously by the law which he attacks and that he is actually aggrieved by its operation.' [Citation.]" (*People v. Cortez* (1992) 6 Cal.App.4th 1202, 1212 [8 Cal.Rptr.2d 580], quoting *People v. Black* (1941) 45 Cal.App.2d 87, 96 [113 P.2d 746].) ■ In this case amended section 781 precludes sealing of Manuel's juvenile records because he committed a Penal Code section 288, subdivision (b) offense and was 14 years of age or older at the time of the offense. In that regard, Manuel is *not* treated differently than an adult who commits a Penal Code section 288, subdivision (b) offense and cannot have his conviction expunged under Penal Code section 1203.4. Therefore, Manuel lacks standing to raise an equal protection claim. (*People v. Garcia* (1999) 21 Cal.4th 1, 11 [87 Cal.Rptr.2d 114, 980 P.2d 829].) He cannot raise equal protection claims of other hypothetical juvenile offenders who may be treated more harshly than adult offenders. (*Ibid.*)

Assuming arguendo Manuel has standing to raise an equal protection claim, we nevertheless conclude amended section 781 does not violate the constitutional equal protection clauses. *Acuna* rejected an equal protection claim in similar circumstances, stating: "The state may make distinctions between different groups of persons so long as the classifications created bear a rational relationship to a legitimate public purpose. [Citation.] Both the high rate of recidivism for child molesters and the particular interest society has in protecting its children justify the treatment of those convicted of violating [Penal Code] section 288 in a manner different from those who have been convicted of other heinous crimes including other kinds of sex offenses. The statutory ban on expungement of [the defendant's] conviction does not violate equal protection." (*People v. Acuna, supra,* 77 Cal.App.4th at p. 1061.) Therefore, the fact that "persons convicted of other heinous crimes, such as murder, mayhem and rape, can still obtain the benefit of expungement" did not result in a denial of equal protection for a defendant who cannot obtain expungement of a Penal Code section 288 conviction pursuant to Penal Code section 1203.4. (*Acuna,* at pp. 1060-1061.) We apply *Acuna*'s reasoning to this case. Although adults convicted of certain offenses listed in section 707, subdivision (b) may be entitled to expungement under Penal Code section 1203.4, persons who commit those offenses as juveniles and were at least 14 years of age at the time may be denied sealing of their juvenile records under amended section 781 without violation of their constitutional right to equal protection of the law. Because of the differences between the juvenile and criminal justice systems, those adults are not "similarly situated" with persons who cannot obtain sealing of their juvenile

records pursuant to amended section 781. (*People v. Green, supra,* 79 Cal.App.4th at p. 924.)[11]

DISPOSITION

Let a peremptory writ of mandate issue, directing the superior court to vacate its order granting the respondent's section 781 motion and to make a different order denying that motion. The appeal is dismissed.

Huffman, Acting P. J., and Nares, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied February 25, 2003.

---

[11]Because we dispose of this matter on other grounds, we need not address the People's additional contention that even under former section 781 the trial court could not grant Manuel's petition because it was filed before six years had elapsed since his commission of the Penal Code section 288, subdivision (b) offense.