Filed 5/12/14  P. v. Sims CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL OSHEA SIMS,<br><br>    Defendant and Appellant. | B248586<br><br>(Los Angeles County<br>Super. Ct. No. NA093791) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed.

Daniel R. McCarthy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Michael Oshea Sims appeals from the judgment entered following his conviction by a jury of second degree robbery (Pen. Code, § 211).[1]  In a bifurcated proceeding, the court found that Sims had suffered one prior serious or violent felony conviction within the meaning of section 667, subdivision (a), and the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subd. (a)-(d)), and had served three separate felony prison terms (§ 667.5, subd. (b)).  The trial court sentenced Sims to an aggregate state prison term of 14 years.  He contends the trial court abused its discretion in failing to sanction the People for violating their statutory discovery obligations.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Crime*

On October 26, 2012 Marvin Alas was working as a theft prevention officer inside a market, where Sims was pushing a shopping cart down an aisle.  As Alas watched, Sims pulled four liquor bottles out of a six-pack and put them next to an open and empty backpack in the shopping cart.  Sims then placed packages of meat and a box of hot link sausages in the cart.  Alas met Sims at the front of the market and asked him if everything was okay.  Sims replied he was unable to find certain items.  Alas noticed that the items Sims had selected were no longer visible in the shopping cart, and the backpack no longer appeared empty.[2]

Alas preceded Sims out of the market and pretended to talk on his cell phone while waiting for Sims to exit.  When Sims left the store, Alas confronted him and demanded that he return the stolen items in his backpack.  Sims denied having taken any

---

[1]    Statutory references are to the Penal Code, unless otherwise indicated.

[2]    The People played for the jury the video recording from security cameras showing Sims and Alas inside the market.

items. Alas took Sims' backpack and told Sims to stay away from the market. Sims grabbed his backpack from Alas and started walking away. Alas falsely told Sims that he had already called the police. Sims ran.

Alas chased after Sims and caught up with him on the sidewalk in front of the market. Alas again demanded that Sims return the stolen items. In response, Sims displayed a black object in his right hand and then covered it with his backpack. Sims then extended his right arm towards Alas and said, "I'm gonna dump on you." Alas believed that Sims had a gun in his hand and had threatened to shoot him. Alas testified, "I feared for my life, so I didn't do anything else, I just stepped back." Sims fled. Alas followed him from a distance and called the police emergency number, explaining that he was pursuing a shoplifter who had threatened to shoot him with what appeared to be a gun.[3] By this time, Victor, a market clerk, had joined Alas. The two of them ran after Sims, while Alas continued to talk to the emergency operator. Eventually, Sims ran to a parking lot, and Alas ran inside a laundromat. Alas repeatedly ordered Sims to keep his hands away from his backpack, which Alas believed contained a gun.[4]

The police arrived and detained Sims. After Alas identified Sims, officers searched his backpack and recovered the stolen liquor, the packages of meat, and the links of sausage. The officers also recovered a cell phone from Sims but no gun.

Sims did not present any evidence in his defense. The trial court instructed the jury on the crime of robbery and the lesser included offense of petty theft. Sims' defense

---

[3]     The jury heard the audio recording of the 911 call and received a transcript. The trial court admonished jurors that the transcript was not evidence and if there was a discrepancy between the recording and the transcript, the jurors should rely on the recording.

[4]     According to the transcript, the audio recording consisted of Alas' description of what had occurred, including his statement that the object in Sims' hand looked like a gun, although he was "not 100% sure," and the names of the various streets Sims traveled during the pursuit. The transcript also included Alas' repeated warnings to Sims, "Don't get close to me" and "Don't go into your backpack."

theory, developed through cross-examination, was that the People failed to prove Sims had accomplished the theft of the store items by means of force or fear.[5]

B.     *The 911 Call*

Following the trial court's preliminary instructions and outside the presence of the jury, the prosecutor informed the court that she intended to have a transcript of the recorded 911 call prepared and to give counsel for Sims a copy of the transcript. The court stated it would conduct a hearing pursuant to Evidence Code section 402 the next morning on the admissibility of the recording. Counsel for Sims made no comment.

The next morning, counsel for Sims moved to exclude "a copy of the 911 call," arguing that the prosecution had improperly delayed its disclosure until the first day of trial, in violation of sections 1054.1 and 1054.7. Counsel for Sims explained that she did not have enough time to determine whether the transcript of the 911 recording was entirely accurate and she believed it contained some errors. The prosecutor replied that the police report indicated there was a 911 call, and Alas had testified at the preliminary hearing that he had called the police emergency number, yet counsel for Sims never requested a copy of the recording.

The trial court denied the motion. The court stated that it would "consider giving [the] jury [an] instruction of late discovery, if required," regarding the disclosure of the audio recording The court also stated, "as far as [the] transcript, this court . . . always tells the jurors that [a] transcript is not evidence, the tape is. In fact, the court tells them

---

**5**     Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211, *People v. Williams* (2013) 57 Cal.4th 776, 781.) The force or fear may occur at the time of the taking or "may be an act committed after the initial taking if it is motivated by the intent to retain the property." (*People v. Anderson* (2011) 51 Cal.4th 989, 995; see *People v. Hodges* (2013) 213 Cal.App.4th 531, 541-542.) The use of force or fear to escape or otherwise retain even temporary possession of the property is sufficient for robbery. (*People v. McKinnon* (2011) 52 Cal.4th 610, 686; *People v. Gomez* (2008) 43 Cal.4th 249, 257.)

that if there is a discrepancy between the tape and the transcript, they are to follow the tape. Also, the transcript is not admitted into evidence and it doesn't go to the jury unless all parties stipulate to it . . . ."

During the discussion of jury instructions, counsel for Sims asked the court to give CALJIC No. 2.28 on the prosecution's failure to disclose the 911 recording timely. The prosecutor responded she had not received the audio recording until the day before trial and had immediately given counsel for Sims a copy. The trial court refused to give the instruction, noting that the recording was known and equally available by subpoena to both the prosecution and the defense.

## DISCUSSION

Sims is not challenging the trial court's refusal to give CALJIC No. 2.28. Nor is he arguing that the 911 recording was inadmissible hearsay. He is only contending that the trial court abused its discretion by failing to exclude the 911 recording as a discovery sanction under the statutory provisions governing discovery in criminal cases, sections 1054.1 through 1054.7, because the prosecutor delayed its disclosure until the day of trial.[6]

Section 1054.1, the reciprocal discovery statute, "independently requires the prosecution to disclose to the defense . . . certain categories of evidence 'in the possession of the prosecuting attorney or [known by] the prosecuting attorney . . . to be in the possession of the investigating agencies.'" (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1133, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) The prosecution must disclose the names and addresses of its witnesses (§ 1054.1,

---

[6] Sims is also not arguing that the late disclosure of the 911 recording violated the prosecution's obligations under *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215], presumably because the recording was not favorable to Sims. (See *People v. Williams* (2013) 58 Cal.4th 197, 255-256.)

5

subd. (a)), "[s]tatements of all defendants" (*id.*, subd. (b)), "[a]ll relevant real evidence seized or obtained as a part of the investigation of the offenses charged" (*id*., subd. (c)), felony convictions of certain witnesses (*id.*, subd. (d)), "[a]ny exculpatory evidence" (*id.,* subd. (e)), and any "[r]elevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial" (*id*., subd. (f)). (See *J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, 1334 ["section 1054.1 specifies the matters that the prosecution must disclose to the defense, including exculpatory evidence and felony convictions of material witnesses"].) "Absent good cause, such evidence must be disclosed at least 30 days before trial, or immediately if discovered or obtained within 30 days of trial. (§ 1054.7.)" (*Zambrano, supra,* at p. 1133.)

Trial courts have broad discretion in determining if a party has violated the discovery statutes and whether to impose sanctions for any such violation. (See *People v. Ayala* (2000) 23 Cal.4th 225, 299; accord, *People v. Curl* (2009) 46 Cal.4th 339, 357.) Upon a showing of a party's failure to comply with informal discovery procedures, a trial court "may make any order necessary to enforce the provisions" of the statute, "including, but not limited to, immediate disclosure, . . . continuance of the matter, or any other lawful order." (§ 1054.5, subd. (b).) The trial court "may also 'advise the jury of any failure or refusal to disclose and of any untimely disclosure.'" (*People v. Verdugo* (2010) 50 Cal.4th 263, 280.) The court "may prohibit the testimony of a witness" as a discovery sanction, "but only if all other sanctions have been exhausted." (§ 1054.5, subd. (c); see *People v. Jordan* (2003) 108 Cal.App.4th 349, 358 ["[a] trial court may enforce the discovery provisions by ordering immediate disclosure, contempt proceedings, continuance of the matter, and delaying or prohibiting a witness's testimony or the presentation of real evidence," but "the exclusion of testimony is not an appropriate remedy absent a showing of significant prejudice and willful conduct motivated by a desire to obtain a tactical advantage at trial"].)

A violation of the discovery statutes is subject to the harmless error analysis articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Zambrano*, *supra*,

6

41 Cal.4th at p. 1135, fn. 13.) Under this standard, we will reverse the judgment only if it is reasonably probable that the defendant would have obtained a more favorable result in the absence of the discovery violation. (*Ibid*; see *Watson*, *supra*, at p. 836.)

Here, the prosecutor stated that she received the 911 recording the previous day in court and "immediately provided a copy to counsel," and then prepared a transcript of the recording that night. As Sims correctly points out, however, even if the prosecutor "did not personally come into possession of the recording until the first day of trial, the 911 recording was in the possession of law enforcement for months, and the discovery statutes therefore required the prosecutor to provide defense counsel with a copy of the recording at least 30 days before trial." Section 1054.1 requires the production of material "in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies." (See *Bridgeforth v. Superior Court* (2013) 214 Cal.App.4th 1074, 1082 ["[s]ection 1054.1 requires the prosecutor to disclose the [certain] categories of information to the defense, if the prosecutor possesses the information or knows it is possessed by investigating agencies"].) A prosecutor's "duty is not linked to his personal knowledge; his duty to inquire and disclose is created by section 1054.1 and his reasonable access" to material that must be disclosed. (*People v. Little* (1997) 59 Cal.App.4th 426, 433; see *People v. Kasim* (1997) 56 Cal.App.4th 1360, 1380 & fn. 15 [the "scope of prosecutorial duty to disclose encompasses not just exculpatory evidence in the prosecutor's possession but such evidence possessed by investigative agencies to which the prosecutor has reasonable access"].) The People do not dispute that the 911 recording was in the possession of a law enforcement agency that was involved in the investigation of the case against Sims and was "part of the prosecution team." (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 906; *People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1313.) The People had an obligation to disclose the 911 recording 30 days before trial, and their failure to do so violated sections 1054.1 and 1054.7.

The trial court suggested that "both parties really had access to [the] 911 tape by subpoena," and stated that "if there [is] certain evidence that [is] available to both sides

7

by . . . way of subpoena, I don't really know what the discovery violation is." That is not the law. Section 1054.5, subdivision (a), provides that the discovery statutes are "the only means by which the defendant may compel the disclosure or production of information from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties." (See *People v. Superior Court (Barrett)*, *supra*, 80 Cal.App.4th at pp. 1312-1313 ["[t]he procedural mechanisms of the discovery statutory scheme (§ 1054 et seq.) are exclusive—that is, the parties to a criminal proceeding may not employ discovery procedures other than those authorized by" the reciprocal discovery statutes].) The discovery statutes required the prosecution to disclose the 911 recording 30 days before trial; a subpoena was neither appropriate nor required.

Nevertheless, despite the violation, Sims has failed to demonstrate that the trial court abused its discretion in declining to exclude the recording. Sims' argument assumes that a statutory violation automatically requires exclusion of evidence. The language of section 1054.5, subdivision (c), which provides that exclusion of evidence is a last resort, is contrary to Sims' position. (See *People v. Superior Court (Mitchell)* (2010) 184 Cal.App.4th 451, 459 [under section 1054.5, subdivision (c), trial court must "consider or exhaust other sanctions before precluding the testimony"].) Indeed, "the normal remedy for noncompliance with a discovery order is not suppression of evidence, but a continuance," and Sims never requested a continuance. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1131; see *People v. McKinnon*, *supra*, 52 Cal.4th at p. 668 ["'[i]t is defendant's burden to show that the failure to timely comply with any discovery order is prejudicial, and that a continuance would not have cured the harm'"]; *People v. Verdugo*, *supra*, 50 Cal.4th at p. 284 ["violation of the reciprocal-discovery statute" was not prejudicial where trial court "permitted defendant to move for a continuance"].) Sims does not argue that the trial court abused its discretion by considering one of the other, less drastic statutory alternatives, such as a continuance or an appropriate jury instruction.

8

Sims complains that "with enough time to prepare" his trial attorney "might have assimilated the recording into an argument that the theft was not accomplished by force or fear, or devised an entirely new plan of attack, or even advised [Sims] to accept a plea bargain." The remedy for this complaint, however, was not exclusion of evidence but a continuance, the very remedy that would have given Sims and his attorney additional time to address these concerns. Sims, as noted, never asked for a continuance, nor did he make any showing at trial that "his defense would have been different had he been provided timely discovery" of the recording. (*People v. McKinnon*, *supra*, 52 Cal.4th at pp. 668-669; see *People v. Verdugo*, *supra*, 50 Cal.4th at pp. 281-282 [defendant's assertion that "'[t]imely disclosure of the information would have enabled counsel to adjust his theory of the case to fit the facts'" was a "generalized statement[]" that was "insufficient to demonstrate prejudice"].) Trial counsel for Sims asserted that there may have been errors in the transcription of the 911 recording, but she did not seek a continuance to verify the accuracy of the transcript or object to the trial court's proposed admonishment to the jury that the audio recording, not the transcript, should be considered as evidence.

Finally, Sims has not met his burden of showing that it is reasonably probable he would have obtained a more favorable outcome had there been no discovery violation. (*People v. Zambrano*, *supra*, 41 Cal.4th at p. 1135, fn. 13.) Even without the 911 recording, the evidence established that Sims accomplished the robbery by means of force or fear. Alas testified that when he demanded that Sims return the stolen items, Sims threatened him with what appeared to be a gun and told Alas that he was going to "dump on him," which Alas understood and explained at trial was "street language" for shooting someone with a gun. Alas also testified that he feared for his life and followed Sims at a distance because he believed Sims had a gun. This evidence supports a finding that Sims accomplished the robbery by force or fear, and there was no evidence to the contrary. Thus, there is no reasonable probability that, even if the trial court had excluded the 911 recording, the result would have been any different. (See *People v. Clark* (2011) 52 Cal.4th 856, 924.)

9

**DISPOSITION**

The judgment is affirmed.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.